ESTATE OF JOHN BARNES, JR., JOSEPH BARNES, ADMINISTRATOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JOSEPH BARNES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 5266, 9577.　Promulgated August 1, 1927.

1. On the evidence, *held*, that the husband, in good faith gave to his wife his interest in a coal mine, which under the statutes of Pennsylvania, rendered the profits from the operation of such mine her, and not his, income.

2. Noncompliance with the " Fictitious Names Act " of Pennsylvania, does not render void the partnership or organization, as such.

*George W. Zeigler, Esq.*, and *Edward J. Thompson, Esq.*, for the petitioners.

*John D. Foley, Esq.*, for the respondent.

By stipulation, the two cases were consolidated and submitted on one record.

These proceedings are to redetermine the deficiency in income tax for the year 1920, in the case of Estate of John Barnes, Jr., in the amount of $6,184.56, and in the case of Joseph Barnes, the amount is $5,364.74.

The issues involved are:

1. The *bona fides* of an alleged gift and transfer by John Barnes, Jr., and Joseph Barnes, each to his wife, in the latter part of 1919, of his one-third partnership interest in the Atherton & Barnes (Troy) coal mine.

2. In the event the *bona fides* of the gift be established, whether under the conditions it constituted a legal transfer of such interest so as to render the wives, and not the husbands, liable for income taxes.

3. In the event the *bona fides* of the transaction be denied, whether or not the petitioners are liable to a fraud penalty.

#### FINDINGS OF FACT.

The petitioners are residents of Philipsburg, Pa.　John Barnes, Jr., died since 1920, and Joseph Barnes is the executor of his estate, and as such, prosecutes this proceeding for the estate and in the companion case, prosecutes his own case.

In 1919, besides being interested in several other businesses, John Barnes, Jr., and Joseph Barnes, each owned a one-third interest in what was known as the Troy coal mine, operated by a partnership firm composed of David Atherton, John Barnes, Jr., and Joseph

Barnes. By the latter part of 1919 the Troy mine had been almost exhausted and only " pockets " of coal were yet to be taken out. For several years prior to 1920 the coal business had been dull and small profits realized. This was particularly true of the Troy mine by reason of its almost exhausted condition.

In the latter part of December, 1919, Mrs. Joseph Barnes suggested to her husband that she would like some income of her own. No definite response was made to that suggestion. Later, probably during Christmas week in 1919, she and her husband were at the home of John Barnes, Jr., on a friendly visit. The two wives then made the same suggestion to the two husbands, urging that they wanted to feel like they had some income of their own. The husbands then responded to the effect that each would give and did give to his wife his interest in the Atherton & Barnes (Troy) coal mine to take effect January 1, 1920, and such was the understanding thenceforward. There was no formal transfer, on the books or otherwise. After the alleged change in personnel of the partnership, there was no statement filed in conformity with the statute of Pennsylvania known as the " Fictitious Names Act." Atherton, the other partner was not consulted in regard to the matter and the record does not disclose the fact that he had knowledge of the claim on the part of the women.

John Barnes, Jr., had been and continued to be the manager of the mine operations and business administration. Neither Atherton, Joseph Barnes, or the women took any part in the conduct of the mine operations. All they knew of such things came through reports usually oral reports, by John Barnes, Jr.

The year 1920, was an exceptionally prosperous year in the coal business and Atherton & Barnes shared that prosperity. During that year the net profits of the Troy mine were paid to and received by David Atherton, Mrs. John Barnes, Jr., and Mrs. Joseph Barnes in the amount of $23,517.38 each, and each of the two women filed an income-tax return for that year, reporting that amount of income.

## OPINION.

LOVE: We are convinced that John Barnes, Jr., and Joseph Barnes, in December, 1919, in good faith intended to give and did give to their several wives their several beneficial interests in the partnership of Atherton & Barnes, and that they and the wives thereafter acted upon that basis; hence, there was no fraud. The two women appeared at the hearing as witnesses. Their testimony, though varying in phraseology, was practically identical in substance, and each testified explicitly to the incidents connected with the gift by their respective husbands to themselves.

There remains, however, the question of law, whether or not in view of the facts in the case there was a legal transfer of the interest in the partnership or a gift of the profits, as and when such profits flowed from the partnership to the men, themselves, as partners.

It will be noted in the findings of fact that there was no formal transfer. There was only an informal, oral gift on the part of the husband with no delivery of anything; that the third member of the partnership was not consulted and so far as the record discloses, remained in ignorance of the claim of the women; that the women took no part in the business management, or operations of the mine. They merely claimed and received, each, one-third of the net profits.

The Uniform Partnership Act of Pennsylvania (Act of March 26, 1915), P. L. 18, Part 5, sec. 27 (1), provides:

A conveyance by a partner of his interest in the partnership does not of itself dissolve the partnership, nor, as against the other, in the absence of agreement, entitle the assignee, during the continuance of the partnership, to interfere in the management or administration of the partnership business or affairs, or to require any information or account of partnership transactions, or to inspect the partnership books; but it merely entitles the assignee to receive, in accordance with his contract, the profits to which the assigning partner would otherwise be entitled.

*Ibid*, section 26:

A partner's interest in the partnership is his share of the profits and surplus, and the same is personal property.

It perhaps is needless to point out that the paragraph last quoted deals only with the interest in the partnership, and is not dealing with property, real or personal belonging, as an asset to the partnership. Such property is dealt with in other paragraphs of the Uniform Partnership Act.

In view of the statutes quoted and in view of the facts in this case, it seems apparent that the wives in 1920 were legally entitled in their own right to one-third of the profits which were realized from the operations of the Troy mine and being entitled to such profits, and having received those profits, they are liable for the income tax thereon.

There remains one other point raised by the Commissioner. In view of the provisions of the statute, Act of April 14, 1851, (P. L. 612, sec. 13), and in view of the fact that no statement disclosing the personnel of the partnership in 1920 was filed in the office of the prothonotary, was that partnership rendered void? That paragraph reads thus:

* * * All persons who are now doing business in a partnership capacity in this Commonwealth shall file or cause to be filed in the office of the prothonotary, in the county or counties where the said partnership is carried on, the names and location of the members of such partnership with the style and name of

the same; and as often as any change of members in said partnership shall take place, the same shall be certified by the members of such new partnership as aforesaid; and in default or neglect of such partnership so to do, they shall not be permitted, in any suits or actions against them in any court, or before any justice of the peace or alderman in this Commonwealth, to plead any misnomer, or the omission of the name of any member of the partnership, or the inclusion of the names of persons not members of said partnership.

It is obvious from the reading of the foregoing statute that its intent was not to render void, and it does not invalidate a partnership the members of which fail to comply with its provisions. See *William W. Parshall* v. *Commissioner*, 7 B. T. A. 318.

*Judgment will be entered on 10 days' notice, under Rule 50.*

Considered by SMITH and LITTLETON.