D. MORTON ROSE, ADMINISTRATOR, ESTATE OF DAN M. ROSE, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 28209, 31482, 38721, 42144. Promulgated April 28, 1931.

W. T. *Kennerly, Esq.*, and C. M. *Hash, C. P. A.*, for the petitioner.
T. M. *Mather, Esq.*, L. S. *Pendleton, Esq.*, and J. M. *Morawski, Esq.*, for the respondent.

## OPINION.

STERNHAGEN: The decedent had for many years been actively engaged in two separate businesses—one, a general lumber business owned and conducted by a partnership in which he owned a ⅚ interest, and the other, the sale of patented end-matcher machines, owned and conducted by decedent individually. So long as he owned these interests, the income thereof was taxable to him; and he sought to reduce these taxes, as he had the right to do if he could. The question for decision is whether he succeeded. If so, it must be because, as shown by the evidence, the income was, when received, not even momentarily his, but, with its source, owned by others.

The respondent has determined that until his death the decedent continued to own the full five-ninths interest in the partnership and the entire end-matcher business, and that the income therefrom during his lifetime was derived by him. The petitioner seeks to prove that decedent had divested himself of three of his five-ninths of the partnership and of four-sixths of his ownership of the end-matcher patent and business. To this end evidence has been received in great detail of steps taken and statements made by the decedent to justify his belief that the income was not taxable to him. Having at one time practiced at the bar, he knew the nature of the evidence which would be required, and he used meticulous care to provide it. This we say only to explain that if we seem to test the evidence strictly, such a test was apparently what the decedent, knowing the subtlety often employed in the law, expected and provided for.

We are of opinion that, adding together all of the data in the record tending to prove that the omitted income, when derived, came not to decedent but went directly to his wife and children, the evidence falls short of the desired end. Despite all the decedent did to have it appear otherwise, he continued, in our opinion, to remain a five-ninths partner in the firm and to own the end-matcher business. Whether he obligated himself to dispose of the income from these interests among his family, we are not called upon to consider. But, even if he did, such disposition would be merely the exercise of a right of ownership; and ownership, even momentary, supports the tax. *Lucas* v. *Earl*, 281 U. S. 111; *Corliss* v. *Bowers*, 281 U. S. 376; *Lansill et al.*, 17 B. T. A. 413.

The existence of a partnership relation such as is contemplated by section 218, among members of a family, is not proven by an empty use of words to accompany a distribution of income which is in all respects voluntary. While, of course, a partnership within a family frequently exists and must be recognized, it is not because they call themselves a partnership as well as a family, but because in reality they are engaged together in carrying on the business of earning the taxable income. It is, for example, uncontroverted that D. Morton Rose, the son, was a one-ninth partner. When his interest was created in 1919, it was not necessary to say very much or to prepare an instrument in the form of a trust. He came into the business, participated in its operation, shared its responsibilities, and by his conduct was recognized as well by third persons as by the partners to be a member of the firm. Nothing like this occurred in respect of the wife and daughters, and the evidence makes it plain that they neither acted as partners nor were treated as such. They continued merely to receive because of kinship; and, if, as we have said, they had legal rights to the income as against the decedent, they were not the rights of partners in the partnership or end-matcher business and property, but rights to a distribution of the income after it was received by and taxable to the decedent. We conclude that the Commissioner's determination as stated in the notices of deficiency and as modified by claims at the hearing are sustained by the evidence. *Mitchel* v. *Bowers*, 15 Fed. (2d) 287; certiorari denied, 273 U. S. 759; *Cohan* v. *Commissioner*, 39 Fed. (2d) 540; *Harris* v. *Commissioner*, 39 Fed. (2d) 546; *Leydig* v. *Commissioner*, 43 Fed. (2d) 494; *W. M. Buchanan*, 20 B. T. A. 210.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

----

Seawell, dissenting: I agree that under *Lucas* v. *Earl*, 281 U. S. 111, the bare right to income can not be conveyed so as to escape income tax for the reason that the income is received by the donor before it is received by the donee. But when property is conveyed which produces income, the donor is never entitled to the income, but only the donee.

In this case the decedent covenanted "to stand seized" to the use of his wife and daughters for their several lives, in certain interests in the properties of the sawmill partnership. This ancient species of conveyance used by the decedent was of the same force and effect as a deed of bargain and sale. It was anciently permitted to be made use of among near domestic relations only and was said to be founded on the consideration of blood or marriage.

This situation prevails here. Upon execution of the covenant the covenantees became seized of the use and the statute of uses imme-. diately annexed the possession to the use. 4 Kent Com. 480, *Cains' Lessee* v. *Jones*, 5 Yerg. (Tenn.) 249. While this mode of conveyance has fallen into general disuse, the statutes of Tennessee are sufficiently comprehensive to include it. Shannon's Annotated Code, sec. 3680. *Sanders* v. *Hackey*, 10 Lea (Tenn.) 194. After the execution of the instrument set out in the findings of fact, the wife and daughters were entitled to the income arising from the property so conveyed. It was never for a moment income to the decedent, and in including it in the gross income of the decedent the Commissioner was in error.

Moreover, at the time of the death of the decedent these life estates were still outstanding and valid in the hands of the widow and daughters (with provision for certain contingent remainders) and to the extent of the value of the life estates so outstanding the five-ninths interest in the sawmill property should not be included in the gross estate of the decedent.

It seems also from evidence appearing in the record that the decedent had likewise given certain interests to his wife and children in the end-matcher patent. If so, to the extent of their interest in the property, as contradistinguished from mere right of income therefrom, the value of the patent right should not be included in the gross estate of the decedent.

Smith and Goodrich agree with this dissent.