OPINION. Leech, Judge: The primary issue is whether by these trusts and partnership agreements to which the trusts were parties the petitioners each retained such a “bundle of rights” in the propetry transferred to the trusts as to render them respectively taxable on the income therefrom under section 22 (a) of the Internal Revenue Code, as construed by Helvering v. Clifford, 309 U. S. 331. The petitioners owned two flourishing partnership businesses. One was a furniture business and the other, small loans. Petitioners testified, in effect, that after discussing the matter, including its tax consequences, with their attorney and tax consultant they decided to create separate trusts for each of their two minor daughters — for the purpose of assuring economic security to their children, who were minors attending a private school in Virginia and, of course, never had furnished any services to either business. The means selected, as petitioners testified, were the trusts and partnership agreements described in the findings of fact. Each trust and partnership agreement to which it became a party was executed simultaneously. . They were intended as a single transaction. All parties, including the children, understood this intention. Both the trusts and the partnership agreements in which they joined evidence conclusively the respective inseparability of such trusts and partnership agreements. Thus construed, what do we find ? It is not denied — in fact the circumstances seem to confirm — that petitioner, Rose Mary Hash, made her husband, G. Lester Hash, a trustee and possible sole beneficiary of the trusts she created in consideration of his similar action in those he created. The corpora of the former were identical with the latter. They were therefore cross-trusts and the effect for tax purposes was that the settlor of each trust became a trustee thereof. Lehman v. Commissioner, 109 Fed. (2d) 99. F. W. Mann, the second trustee in each trust, was the intimate friend and personal attorney of both petitioners. They were advised by him as well as their accountant in connection with the plan. The testimony of Mann was that he knew little or nothing about either the furniture or small loan business and that his connection with both of them was merely formal and consisted only of endorsing checks presented to him for that purpose and executing income tax returns prepared by the accountant. Thus, the second trustee was not independent and the-settlor is therefore to be considered, for present purposes, as the sole trustee. Commissioner v. Barbour, 122 Fed. (2d) 165; Commissioners. Lamont, 127 Fed. (2d) 875; Bush v. Commissioner, 133 Fed. (2d) 1005. Unless dissolved, as provided in the agreements, the partnerships were to continue as long as petitioners lived and the trusts existed. But dissolution would have been difficult, if not impossible, without the consent of the settlor-trustee. In fact, in some of the dissolution as well as the arbitration provisions of the partnership agreements, the settlor-trustees are alone recognized as members of the partnership. During the lives of the partnerships, though their profits were to be determined at the close of the tax year and were then payable in equal proportions to the partners on demand within two and one-half months thereafter, the share of any partner failing to make such demand was credited to his capital account and could not thereafter be withdrawn except with the consent of all other partners. As settlor-trustee, each petitioner could and did thus fail to withdraw that income. In their individual capacities, as partners, petitioners could thereafter prevent its withdrawal during the life of the partnership. None of it was withdrawn and it remained in the business of the partnerships as it had been theretofore. This capitalized income, under the trusts, became capital thereof and was distributable by the trustees only after the termination of the trust and then “in such proportions and at such times as, in the judgment of the Trustees, will best serve the interest of the beneficiary.” The trustees were not only authorized under the trusts to become members of or loan to these partnerships, with or without security, but were likewise authorized to invest it “in the bonds and stocks of any corporation in which the grantor is a majority stockholder and officer” — and all this without liability except for fraud or embezzlement. Neither trust was to terminate until the youngest child of the daughter, the primary beneficiary, attained the age of 21, or, on the failure of such issue, until the youngest child of the other daughter became 21, and if both children, primary beneficiaries of the trusts, died without issue, then the trust terminated at the date of the death of the daughter who lived longer — except that the trustees could terminate each trust “if, in the judgment of the Trustees, the purposes of this Trust will be accomplished by the beneficiary’s own capable management of the corpus and income.” It is true that the interests, the legal title to which petitioners assigned to the trusts, were valuable. Admittedly, specific beneficiaries were named as the recipients of the trust benefits. But, we think, the transfers to the trusts were practically limited to legal title. Petitioners' retained substantially the same control over the income as well as the corpora of the trusts as they had theretofore. They were, for present purposes, the real beneficiaries of the trusts. They intended this to be so. They say they desired tp create separate estates for their children, but in the same breath they emphasize their fear that either or both of their daughters might marry “fortune hunters” or “liquor heads.” So they proposed to retain, at least during their lives, control over these “separate estates” until the petitioners, settlors, were certain the conditions they desired had come to pass. Thus, whatever may be the legal effect as to the beneficiaries of the trusts, under provisions in the first trusts “the Trustees are hereby given authority to remove any beneficiary or beneficiaries who in the judgment of the Trustees prove themselves grossly unworthy of this trust and to appoint another beneficiary or beneficiaries to be selected from the contingent beneficiaries hereinabove named.” These were later “clarified” by'decree of the local West Virginia courts to accord with the provisions of the latter two trusts under which “the trustees” were authorized to bring an action in those courts for such a change in beneficiaries which could result in their respective recovery, as named contingent beneficiaries, of any legal title that might have passed to the trusts. Moreover, and very significantly, unless terminated by the settlor, both the corpora and accumulated income were to revert to the respective settlors unless both or either of their daughters had issue who lived to be 21 years of age. The facts here are strikingly.,similar to those in the case of A. R. Losh, 1 T. C. 1019; affd., 145 Fed. (2d) 456, where we applied the Clifford rule. We do so here. Our conclusion from this record is that by these trusts and partnership agreements each petitioner retained such a “bundle of rights” in the corpora of the trusts which each petitioner creatéd as to con-' stitute them the substantial owners thereof, respectively, and taxable on the income therefrom under section 22 (a) of the code, as construed in Helvering v. Clifford, supra. Petitioners rely heavily on Robert P. Scherer, 3 T. C. 776. But the situation there is readily distinguishable. In that case more than mere legal title was transferred to the trusts. The settlor was not even a trustee. The children, beneficiaries, could and did receive funds from the trust. Moreover, the respondent did not attack the validity of the transfers to the trusts as gifts to the children. In fact he had determined and was attempting in that proceeding to sustain a deficiency in gift tax resulting from his increased appraisal of the value of the gifts. Respondent’s “* * * own expert witness testified as to valuation of the gifts upon the basis that completed gifts had been made and that Mrs. Scherer and the three minor children were the owners of respective interests in the business and entitled to shares of its annual net income * * On that record, we held in effect that respondent had conceded that the gifts to the beneficiaries of the trust were complete and that the income of the trust was therefore not taxable to the grantor under section 22 (a). Upon that premise, we were left, as was stated, with the single question as to whether the trust was, for income tax purposes, to be recognized as a member of the partnership. It is against this background that the remainder of our opinion in the Scherer case must be read. It Was then decided that the trust was to be so recognized and therefore under section 181 of the Internal Revenue Code the income of the partnership was taxable to the several partners, including the trust. Here, respondent in no way conceded that the transfers to the trusts were valid and completed gifts to the named beneficiaries. True, gift tax returns were filed and purported gift taxes paid. But those facts can not be contorted into a concession that the transfers allegedly basing such action were completed gifts to those beneficiaries. Helvering v. Clifford, supra; Armstrong v. Commissioner, 146 Fed. (2d) 457 (C. C. A., 7th Cir.). In fact, respondent directly attacks here the validity of the transfers to the trusts as such gifts. That is essentially the premise of his determination. He does not question the fact that the trusts received legal title to property, nor that the trusts are empowered to exercise the rights conferred by those instruments. He does not challenge the validity of either the trusts or the partnerships under the law of West Virginia, where they were created and functioned. In fact he has recognized the trusts as such in his determinations of the deficiencies. See Helvering v. Clifford, supra; M. M. Argo, 3 T. C. 1120. He rests his position here solely upon the contention that the beneficial interests in the property, the legal title to which passed to the trusts, because of the powers and control retained by the grantors, remained in the grantors instead of going to the named beneficiaries, as a result of which the grantors are taxable on the income of the trusts and, as we have seen, such contention finds much more support in the record here than in the Scherer case. The settlor in this case was, for present purposes, sole trustee of each trust. Little, if anything, except legal title was transferred to the trusts for the children. The transactions worked no substantial change in the economic status of the settlors. Petitioners argue that even if we find, as we have, that the trusts and new partnership agreements to which the trusts were parties did not relieve the petitioners, grantors of those trusts, from income tax on the income' of the trusts, w© must recognize both these trusts and partnerships for the purpose of determining the tax years of the petitioners in which this income shall be included. They contend that, except for their respective liabilities for income taxes as set-tlors of the trusts, both the trusts and partnerships are valid and must be so recognized here. Their position is that (1) the income of each partnership must be computed on the basis of its fiscal year (secs. 183 and 41, Revenue Act of 1938; Regulations 101, art. 187-1); (2) the computation of that income must give effect to the deduction of the salaries of petitioners as provided in those partnership agreements and which were actually paid before the equal division of the resulting net income and that such salaries are then to be added to, as a part of, the share of partnership income distributable to each petitioner (S. U. Tilton, 8 B. T. A. 914); and (3) that these distributive shares of petitioners and those of the trusts are to be included in the income of petitioners for the calendar years in which the fiscal years of the partnerships ended (the trusts had the same fiscal years as the partnerships). Secs. 188 and 164, Revenue Act of 1938. Mary E. Wenger, 42 B. T. A. 225; Jerome P. Burr, 11 B. T. A. 1005; F. E. Malm, 11 B. T. A. 859; W. J. Woodruff, 11 B. T. A. 477; J. E. Asbury, 4 B. T. A. 1244; J. H. Goadby Mills, 3 B. T. A. 1245. Respondent apparently concedes that if these new partnership agreements were such in fact, then the petitioners’ position on this point would be sound. He has completely disregarded these new agreements simply because, he argues, they were actually no more than an attempt on the part of the petitioners to change the tax year of the old partnership from a calendar to a fiscal basis without respondent’s consent. This, of course, presents only a question of fact. We think it must be decided for the petitioners. A mere reading of the old and new contracts is convincing on the point. Moreover, it must be noted that before the execution of the new National Finance Co. partnership contract, the income from the business of that company was included in that of the old Hash Furniture Co. and so reported. Thus the business of the Hash Furniture Co. under the new partnership agreement was not what it was before. It was limited to the furniture business. And that of the National Finance Co., under its new partnership agreement, was to be and was conducted as a separate business and not as a department or division of the Hash Furniture Co. We sustain the alternative position of petitioners on this issue. The remaining issue concerning the ownership of the business known as the Beckley Auto Exchange, and certain oil interests, has been determined by our finding that the properties involved were those of the partnership known as the Hash Furniture Co., and the earnings therefrom should be included in the partnership income. We think this finding is amply supported by the evidence, since it appears that these properties were acquired with partnership funds and the disbursements were entered on the partnership books as its investments. The mere fact that title to the properties was held in the name of one of the partners does not contradict this conclusion. The parties have stipulated the facts necessary for recomputation of the deficiencies in accordance with the foregoing opinion. Decisions will be entered under Rule 50.