**LARSON v. KRAEMER, Collector of Internal Revenue.**

Civ. No. 2218.

United States District Court
D. Connecticut.

April 15, 1949.

Additional Conclusion of Law April 26, 1949.

Curtiss K. Thompson, Thompson, Weir & MacDonald, New Haven, Conn., for plaintiff.

Adrian W. Maher, U. S. Attorney, District of Connecticut, New Haven, Conn., Edward J. Lonergan, Asst. U. S. Atty., Hartford, Conn., Lyle M. Turner, Dept. of Justice, Washington, D. C., for defendant.

SMITH, District Judge.

This action for recovery of income tax for the fiscal years ending August 31, 1940 and 1941 is based primarily on a claim that the income from a school of which the taxpayer was the head, and from other investments, should be credited one-half to the husband and one-half to the wife, as equal partners, rather than all to the husband.

From sometime in 1920, about a year after their marriage in 1919, the wife worked alongside the husband, building up and carrying on a school business started by the husband a few years before. No salary was paid the wife for her work.

Real estate and other investments acquired from time to time, as well as bank accounts, were held sometimes in the name of the husband, sometimes jointly, with or without the right of survivorship.

Income tax returns were filed only by the husband until 1937, when the possibility of important tax savings led to a written partnership agreement between the two, and the filing of returns as partners.

The principal school building, built in 1931, and land on which it stands, purchas-

ed in that year, were in the name of the husband. No effort was made to set up a capital account on the books of the school, showing half the assets belonging to the husband and half to the wife, but after 1937 half the school earnings, less withdrawals by her, were credited to a capital account opened in the name of the wife. On the books, most of her expenses were still paid by the husband from the portion of the earnings credited to him.

Plaintiff claims a partnership from 1920, and in the alternative, partnership from 1937, the date of the written agreement.

Defendant contends that the relationship is merely that of husband and wife, not of business partners, stressing the lack of any provision for specific apportionment of profits, at least prior to the 1937 agreement, and the lack of change in the actual method of handling family income and expenses thereafter.

Undoubtedly there was a haphazard, mutually-trusting, handling of the title to income and assets and payment of expenses, not only before but also after the tax savings possible through partnership became apparent and the 1937 agreement was entered into for that purpose.

■ Absent any sinister purpose in the accounting methods used, however, the taxpayer should be able to establish the true legal relationship of each to the business and investments and the income therefrom under the law of the state for its bearing on how and to whom the income is taxable under the Federal income tax laws, even though not all "partnerships" for state purposes may be held to be such within the meaning of the Federal income tax laws.

■ Here there can be little question, in view of the fulltime services and substantial contribution of the wife (dean of the college in fact as well as in name) to the building up of all the assets of the couple, that the courts of the state would hold her to be a full and equal partner of her husband in the business enterprise and entitled to an accounting of one-half of its profits from 1920 on. Moreover, there is here no sham vesting in the wife of more than her rightful share of the assets to create a technical partnership for tax purposes.

The business did belong to the family group. It was built up by the efforts of both, and managed by the two in close consultation throughout. The original property contribution was very small and of little significance. The profits were not formally distributed year by year. Expenses of both were paid from the pot. What was left each year and went back into the business or into investments was no less the property of an equal partnership because it was also the property of a married couple. The wife carried her equal share of the work and problems of the family group and also of the business enterprise.

In the Tower and Lusthaus cases, Commissioner of Internal Revenue v. Tower, 1946, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670, 164 A.L.R. 1135; Lusthaus v. Commissioner, 1946, 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679, the approaching incidence of heavy individual taxation led to the creation of business entities claimed to be partnerships. Here the tax situation led not to the creation, but to the recognition and definition, of an existing joint ownership of long-standing.

The Collector does not dispute the claim that the wife's contribution of services was sufficient to satisfy the requirement for substantial contribution of capital or services to establish a true partnership relation. He apparently bases his attack on the claimed partnership on the lack of any consistent earmarking of any percentage of profits for the wife before 1937. He also points to the cases holding that a wife's services to the husband are ordinarily expected to be made without payment by reason of marital relationship.

Here, however, the services were of a business nature, including full-time attendance at the business premises, full sharing in all decisions, signing of the great majority of checks for all purposes, signing or endorsing of notes for money borrowed for the business, and active conduct of many of its phases.

■ The nature and extent of the services were such that the wife had a right

to share in the proceeds of the business even prior to the 1937 agreement. The existence of that right, regardless of its exercise, takes this case out of the Tower and Lusthaus cases. There it was attempted, by gift of assets, to be continued in business use as the wife's contribution, to create a right to a share in future profits. The Court refused to allow such a change by gift, in the ownership of business assets, to be used to shift the tax burden between husband and wife for tax-saving purposes.

The 1937 agreement here is founded on no such free gift of assets, however. It recognizes an existing obligation for which the consideration is conceded to be ample. Undoubtedly the possible tax savings had much to do with this attempted spelling out of the legal position of the parties, a perfectly normal and legal impetus to action.

From 1920 on, the liquid funds of the business were in joint bank accounts, considered equally available to both for any purpose. Little was drawn by the wife for her own personal use. It is not claimed by the defendant that this is conclusive of the absence of a partnership relation. It is claimed that it is evidence of its absence and that the most significant of the other facts pointing in that direction are the taking of title to the new school property and the signing of the mortgage upon it in 1931 by the husband only, particularly in view of the fact that it represented the major portion of the retained profits earned by the joint efforts of both for the prior eleven years. Taken alone, it might be persuasive that both intended the whole beneficial interest to be in the husband. It is outweighed, however, by the picture of the entire course of dealing of the couple. They agreed in 1920 to share equally. Some of their actions in the next twenty-one years might be interpreted as inconsistent with the agreement, but the total effect of all their actions leaves the overwhelming impression that throughout the whole period they acted on the basis of equal sharing of both the benefits and the burdens of the school business.

Form of judgment for the plaintiff in accordance with this opinion may be submitted on notice or by agreement of counsel on amount.

## Findings of Fact

1. The plaintiff is a resident of the Town of Hamden in the State of Connecticut and the husband of Olga K. Larson, likewise of said Town and State.

2. He filed his income tax return for the fiscal years ending August 31, 1940 and August 31, 1941 with the Collector of Internal Revenue at Hartford.

3. During the said fiscal years and for many years prior thereto, the plaintiff and his said wife were engaged in business as copartners in the ownership and operation of a private school located in the Town of Hamden, known as Larson Junior College under an arrangement whereby they were entitled to share equally in any profits thereof.

4. During such fiscal years the plaintiff and his wife were the owners of certain securities which were registered in their names as joint tenants with the right of survivorship and not as tenants in common and which had been acquired by them with monies furnished by the joint efforts of each in substantially equal amounts.

5. During the first of such fiscal years the plaintiff and his wife received as dividends on such securities the sum of $631.90 and during the succeeding year, i. e., that ending August 31, 1941, such dividends received by them amounted to $671.50.

6. With respect to each of the aforementioned fiscal years and within the time allowed by law, the plaintiff and his wife caused to be filed with the Collector of Internal Revenue for the District of Connecticut a Federal income tax reporting the income of their co-partnership and the expenses and other charges deductible in determining the net income of such partnership for each of such years and that it was divided equally between the plaintiff and his wife.

7. With respect to each of the aforementioned fiscal years and within the time allowed by law, individual income tax returns were filed by the plaintiff and his wife showing the receipt by each, as income, of half the net income of their co-partnership.

8. In her individual income tax returns for the aforementioned fiscal years, the

plaintiff's wife also reported as income the sum of $360.00, representing the value of certain maintenance furnished her in each of such fiscal years at the expense of said co-partnership.

9. The plaintiff and his said wife paid to the Collector of Internal Revenue for the District of Connecticut the taxes shown as due upon their abovementioned individual returns.

10. On or about October 14, 1946, the Commissioner of Internal Revenue notified the plaintiff of deficiencies in his income taxes for the fiscal years ended August 31, 1940 and August 31, 1941 in the amounts of $1,872.83 and $7,340.73, respectively, and that such deficiencies arose

a. because the Commissioner of Internal Revenue considered that no partnership existed between the plaintiff and his wife, Olga K. Larson, during such fiscal years, and that the entire net income from the business known as Larson Junior College belonged, and was taxable to, the plaintiff;

b. because the Commissioner of Internal Revenue considered as income of the plaintiff in each of such fiscal years the payments of $360.00 each, referred to in paragraph 8 hereof;

c. because the Commissioner of Internal Revenue considered that the dividends referred to in paragraph 5 hereof, belonged entirely, and were taxable, to the plaintiff in each of such fiscal years.

11. On or about January 15, 1947 the plaintiff paid to the defendant as Collector of Internal Revenue for the District of Connecticut the sum of $1,872.83 with interest thereon of $692.94 in payment of the alleged deficiency for the fiscal year ended August 31, 1940, and the sum of $7,340.73 with interest thereon of $2,275.63 in payment of the alleged deficiency for the fiscal year ended August 31, 1941.

12. For several years prior to 1919, plaintiff operated a commercial school on a small scale in one room of an office building in New Haven.

13. In 1919 he married Olga, his present wife, a former pupil in the school.

14. At this time, his total assets were worth about $2,500.00, hers—a few hundred dollars.

15. In 1920 plaintiff's wife desired to help in the school. He objected at first but consented on condition that they share and share alike.

16. With the exception of an hour or so in the morning, the wife thereafter worked fulltime days and many evenings at the school, teaching, doing clerical work, and handling most of the drawing and signing of checks for business expenses.

17. The school succeeded and expanded, changing quarters several times until, in 1928, boarding students were first enrolled.

18. A large residence on Whitney Avenue in New Haven was leased for the school, and living, eating and recreational, as well as classroom, space provided therein.

19. Cultural as well as commercial subjects were added to the curriculum. The faculty was enlarged.

20. Continual expansion brought the purchase of land at Whitney Avenue and Servoss Street in Hamden in 1931 and the construction of a modern school building thereon.

21. In 1939 an old mansion and some five acres of land across Lake Whitney from the new school building were also acquired.

22. The school was made a junior college in 1935 and was empowered by the legislature to grant degrees.

23. After the years in question, it was changed from a private commercial enterprise to a non-profit institution controlled by a board of trustees.

24. Plaintiff's wife worked at the school fulltime from 1920 until the present, her duties expanding with the growth of the school to include the supervision and advising of boarding students, overseeing of dining and living facilities and supplies, the duties of registrar, and eventually those of the dean of the college. She was consulted and took part in making all decisions of policy. She never drew a salary until the conversion to a non-profit basis.

25. In May, 1920 a joint checking account was opened. It was used for business expenses and for the personal expenses of both.

26. In April, 1920 a two-family house was purchased. Title was taken in their joint names and mortgages for $7,300.00 were assumed.

27. They lived in one apartment and rented the other until, in 1928, they moved into the school building, #291 Whitney Avenue, New Haven.

28. Thereafter both apartments were rented until the house was sold.

29. In July, 1921 they purchased a shore cottage in the names of both with right of survivorship, assuming a $2000.00 mortgage. The cottage was used at times for school purposes and was still owned during the fiscal years here in question, but it was carried on the school books as property of the business.

30. In July, 1927 another checking account in the name of Larson School was opened in the Union & New Haven Trust Company. Each had authority to draw upon this account but there was no survivorship arrangement. It was used by them not only for receipts and disbursements of the school but for some personal expenditures also.

31. Transfers were made from this account to a joint and survivorship account in the same bank, called the "Special Account", which was opened in 1930, and which was used only for meeting the payroll of the school.

32. Still another account was maintained by them in the Union & New Haven Trust Company. This was joint, without survivorship, and was called the "Investment Account". Transfers were also made to this account from the Larson School account.

33. In making transfers to either the Special or Investment accounts, checks were frequently endorsed with the rubber stamp designed for use in making deposits in the Larson School account, and which carried the name of each directly above the name of the school.

34. Of the 398 checks drawn on the school account from December 15, 1930 through July 25, 1931, all but twenty were signed by Mrs. Larson. During the same months, there were twenty-four checks is-sued on the Investment account, of which all but six were signed by her.

35. During the 1920's the school was profitable and this enabled Mr. and Mrs. Larson to save and make investments. They dealt with several brokers who would submit offerings to them and then they, after inquiries, would decide on the security to buy.

36. Among the securities purchased by them during these years were the following:

$500 mortgage note of William T. and Emily M. Bissell

$500 mortgage note of Samuel Campner and Morris Pouzzner dated June 20, 1924

$500 mortgage note dated June 15, 1926, secured by #59 Elizabeth Street, New Haven

$1,000 mortgage note dated September 25, 1928, secured by #261 Main Street, Worcester, Massachusetts

$1,000 bond of Mayflower Corporation

37. Among the stocks they purchased were six (6) shares of United States Steel Corporation, ten (10) shares of Standard Oil Company of New Jersey, ten (10) shares of Scoville Manufacturing Company, ten (10) shares of American Piano Company, ten (10) shares of United Illuminating Company,—and other holdings in Southern New England Ice Company, Bon Ami, Federal Water Service, Connecticut Power Company, Bridgeport Brass Company, and Safety Car Heating and Lighting Company. In the early 1930's they added ten (10) shares of Aetna Life Insurance Company and six (6) shares of Allied General Corporation.

38. All these securities were registered in their joint names with the right of survivorship, and they were kept by them in a safety deposit box to which both had access.

39. In 1928 and 1929 Mrs. Larson took out five (5) separate policies of life insurance with the State Mutual Life Insurance Company, all of which were payable to Mr. Larson as beneficiary. On the application forms for these policies a question was asked as to the relationship or insurable interest of the beneficiary named. In each

instance Mrs. Larson aswered "Husband and business partner".

40. In 1928 Mr. Larson also took out some insurance policies in the same company, making Mrs. Larson the beneficiary. He, too, in answer to the question as to the relationship or insurable interest of the beneficiary, stated "Wife and business partner".

41. These policies were purchased as the result of discussions between the agent and both Mr. and Mrs. Larson.

42. When the land at Whitney Avenue and Servoss Street was purchased, the deed was made to plaintiff only. It was purchased with the intention that the beneficial interest therein should be in plaintiff and his wife jointly.

43. A mortgage for much of the debt incurred for construction cost of the new school building on the land at Whitney Avenue and Servoss Street was signed by plaintiff only.

44. The purchase price of the land was paid partly from the joint Investment account ($10,000.00) and partly from the proceeds of a joint note ($15,000.00). Joint notes were also used in financing during construction and the financing of the business of the school was normally carried on through bank borrowings on joint notes of plaintiff and his wife.

45. The real property acquired in 1939 was taken in their joint names.

46. About the time of the mortgage in 1931, Mr. Larson took out $75,000.00 in term life insurance. In applying for this insurance, no mention was made of Mrs. Larson's being his partner.

47. The purpose of the insurance was to protect Mrs. Larson with respect to the mortgage indebtedness.

48. To give Mr. Larson similar protection, Mrs. Larson, in 1932, took out a policy in his favor in the Connecticut General Life Insurance Company, stating in the application in response to an inquiry about her occupation that she was "Assistant Principal and Partner".

49. In November, 1935 three policies in the State Mutual aggregating $25,000.00 in death values were issued to her, without her making any declaration respecting the partnership between her and her husband.

50. A year later, in November and December, 1936, four (4) additional policies aggregating in excess of $25,000.00 were issued to her, and with respect to these she again declared Mr. Larson to be her "Husband and business partner".

51. In December, 1938 four (4) more policies were issued by two different companies, i.e., John Hancock and Penn Mutual, for a total of $30,000.00 and on the application for these she once more declared Mr. Larson to be her "Husband and business partner".

52. In May, June and October, 1939 Mrs. Larson applied to National Life Insurance Company for further policies, stating nothing as to Mr. Larson's being her partner, but declaring that she was her own employer.

53. All these policies were made payable to Mr. Larson and were to protect him against the indebtedness incurred.

54. The insurance was purchased from several agents and only after conferences between them and Mr. and Mrs. Larson.

55. While Mrs. Larson was purchasing the additional policies in the later years, Mr. Larson was converting his large term-policy, so that each had about the same amount of insurance in force.

56. In 1937 a written partnership agreement was signed by plaintiff and his wife in order to realize income tax savings.

57. Prior to that time, the accountant had carried the net worth of the business in a proprietorship account in the name of plaintiff only.

58. Thereafter he credited to the wife's proprietorship account one-half the net profits in each year, less her drawings for the year.

59. Most of her living expenses and insurance premiums he continued to deduct from the portion of net profits credited to the plaintiff.

60. This was not brought to the attention of the plaintiff or of his wife until after the years here in question.

61. After the signing of the 1937 partnership agreement, partnership income tax returns were filed.

62. Plaintiff and his wife acted as equal partners in the ownership and management of their business and investments from 1920 until a date subsequent to August 31, 1941.

### Conclusions of Law

1. The Court has jurisdiction of the parties and subject matter of the action.

2. Husband and wife, if bona fide partners in business, are entitled each to include, in computing his or her net income, his or her distributive share of the ordinary net income of the partnership.

3. Plaintiff is entitled to recover the amounts erroneously overassessed against him for the fiscal years ending August 31, 1940 and August 31, 1941 because of the denial of his claims that his wife Olga was an equal partner in his business and in the ownership of securities in those years.

### Additional

### Conclusion of Law

3a. The amount of $360.00 per taxable year, representing maintenance furnishing the wife by the school, represents income of the wife and not of the husband and was erroneously included by the Commissioner in the husband's gross estate.

4. Defendant Kraemer is entitled to be relieved of individual liability for money received by him as Collector of Internal Revenue for the District of Connecticut on an over-assessment made in good faith.