## MAIATICO v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10344.

United States Court of Appeals
District of Columbia Circuit.

Argued March 24, 1950.

Decided June 19, 1950.

Mr. John E. Shea, Washington, D. C., with whom Mr. George E. McMurray, Jr., Washington, D. C., was on the brief, for petitioner.

Mr. S. Dee Hanson, Special Assistant to the Attorney General, with whom Mr. Ellis N. Slack, Special Assistant to the Attorney General, was on the brief, for respondent.

Messrs. Charles Oliphant, Chief Counsel, Bureau of Internal Revenue, John M. Morawski, Special Attorney, Bureau of Internal Revenue, Washington, D. C., and Lee A. Jackson, Special Assistant to the Attorney General, also entered appearances for respondent.

Before CLARK, PRETTYMAN, and KIMBROUGH STONE (sitting by designation), Circuit Judges.

STONE, Circuit Judge.

This is a petition to review a redetermination by the Tax Court deciding that certain rental income during 1942 and 1943, reported in returns of a trustee, was not taxable to the trusts but was taxable in full to petitioner. The bases of the decision were that neither the trusts nor a partnership (in which petitioner and the trustee participated) should be recognized for income tax purposes.

### The Trusts.

Postponing the issue as to the partnership, the basic inquiry as to whether this income was taxable to the trusts or to petitioner is whether the creation of the

trusts by petitioner severed entirely his ownership and control over the properties and the incomes therefrom. The answer "must depend on an analysis of the terms of the trust and all the circumstances attendant on its creation and operation" Helvering v. Clifford, 309 U.S. 331, 335, 60 S.Ct. 554, 84 L.Ed. 788. In this analysis, special scrutiny of the arrangement is necessary because these trusts are concerned only with members of the family of petitioner. Helvering v. Clifford, supra, 309 U.S. at page 335, 60 S.Ct. at page 556, 84 L.Ed. 788.

■ An analysis of the undisputed evidence (for the most part reflected in the findings of the Tax Court) is as follows. The idea of creating the trusts did not originate with petitioner. His wife insisted that he should make some provision for the future of their four children so "they would have something to start out with, their education or whatever they wanted to do." This resulted in petitioner consulting with Mr. George P. Lemm, who was a business associate and a lawyer, about giving the children an interest in some of his property. Petitioner, with Mr. Lemm and several others, owned four parcels of unimproved land in Washington, upon one of which construction of an apartment house had been begun. The interest of petitioner was one half or less in each tract. The business of this group was acquisition of vacant city land and improvement (through loans) into income-producing property.

Lemm advised that the contemplated gifts would have to be in the form of trusts because of the minority of the children and explained the "mechanics" of a trust to petitioner. Petitioner indicated the property he had in mind to give to each child was an undivided one-fifth of his interest in the three parcels which were entirely unimproved. Successively, petitioner asked Lemm and two other persons to act as trustee and, when all declined, suggested his wife. Lemm prepared the four trust instruments (identical except as to beneficiary) covering these fractional interests and naming the wife as trustee.

When petitioner and his wife came to the office of Lemm to execute the instruments, she complained that petitioner was not "giving me anything for the children" as these three properties were unimproved. She suggested he include the property upon which construction had been begun. After some discussion, he agreed. Lemm suggested they execute the trust instruments as drawn and cover the other property by a sale to the trustee. The trust instruments were executed on January 2, 1941, accompanied by appropriate conveyances. Next day, petitioner conveyed to the trustee four-fifths of his interest in the property being improved (one-fifth for each trust) in return for the trustee's note for $20,973.20 and certain undertakings. With the execution of the foregoing instruments, the trustee became owner of an undivided fractional interest in the four properties. January 11, 1941, the co-owners of these four properties agreed to and did acquire a fifth property.

The apartment house which had been begun was completed in May or June, 1941. Another apartment house was finished, early in 1942, upon one of the three original tracts. A two-story business building was constructed on the last of the properties acquired. All of these buildings were rented under arrangements requiring no managerial or other services from the co-owners. It is the proportional share of the rentals from these three buildings in 1942 and 1943 coming to the trustee which is the subject of this controversy. All of these buildings were erected by contractors or sub-contractors other than the owners and were paid for by borrowed money secured by mortgages on the respective properties.

The deeds of trust and later conveyances to the trustee were irrevocable. The trustee was given wide power to sell, improve, incumber, exchange, invest and reinvest all or any of the trust corpus "upon such terms and conditions as she may deem proper." The trustee was also given power to make payments "to the guardian of said beneficiary" prior to arrival of age. Upon coming of age, the trust was to terminate

and the corpus be delivered to the respective beneficiary.

Since the creation of the trusts, petitioner has not attempted to exercise any control over any of the trust properties or any income due the trusts. Mr. Lemm kept books for all of the co-owners. Those books showed the income from these properties proportioned according to ownership. During 1942 and 1943, Mr. Lemm and petitioner each were paid $300 monthly. Lemm made most of the final decisions and did most of the work in connection with entering into the construction subcontracts. The trustee was paid $3,000 during 1942 and $3,200 during 1943. These payments were used entirely to pay income taxes for the trusts and life insurance for the beneficiaries. Before the trusts, petitioner had been engaged with others in acquiring vacant land in Washington and improving it into income-producing property. The improvements were with borrowed money secured by the property, and the method was to pay such indebtedness with the income from the property. This procedure continued after creation of the trusts and, so far as shown by this record, the entire income from these properties was applied to reduce the encumbrance indebtedness thereon—except the amounts set out before as paid to petitioner, Lemm and the trustee.

During the construction of the first apartment house, the trustee thought the work was going slowly, so she recommended three of the sub-contractors who did the plastering, painting and roofing respectively. She went on the job from time to time and talked with the superintendent. As to the other apartment house, she recommended the painter and was on the work on an average of twice weekly. As to the business property, she suggested that it be constructed for a restaurant on the ground floor. She objected to the possible use of the second floor, and the possible tenancy was altered accordingly.

From the foregoing analysis of the trust instruments, of the circumstances surrounding their creation, and of the operation under them, it is clear that these trusts were and are valid entities for income tax purposes.

### The Partnership.

■ Practically the entire emphasis of respondent here is placed upon the partnership situation. Both the Tax Court and counsel for respondent treat the partnership as being a "family" partnership and subject to the sharp scrutiny such a partnership invites in income tax matters. The legal basis of the Tax Court determination is the tests (as construed by the Tax Court) of the cases of Commissioner of Internal Revenue v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670, 164 A.L.R. 1135 and Lusthaus v. Commissioner, 327 U.S. 293, 66 S. Ct. 539, 90 L.Ed. 679 in considering family partnerships. Removing the undue "emphasis" placed upon the test as set out in these two cases, Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 742, 69 S.Ct. 1210, 1214, 93 L.Ed. 1659 stated the rule to be "whether, considering all the facts—the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent—the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise."

While this rule was announced in a "family" partnership case, yet it equally is applicable to partnership cases in general. It is the test here where the partnership is not a family partnership. The determinative inquiry is as to the good faith intent of the parties to combine for a business purpose.

■ The creation of the trusts was prior to and with no connection with nor contemplation of the later partnership. The suggestion of a partnership came from Lemm after the trusts had been created. The partnership included not only petitioner and the trustee but four other persons who had no family connection with petitioner or the

trustee.[1] The partnership arrangement was a natural result of the combined influence of three factors in the situation: the nature of the business (acquisition and development of vacant land), the undivided co-ownership, and the minority of the trust beneficiaries. The partnership contract consists of three paragraphs. The first states that the signers are co-owners of described vacant land in the District of Columbia in the percentages set forth. The second paragraph provides for the purchase and improvement of a described tract—each party to bear the proper proportionate expense. The third paragraph is as follows: "The parties agree to work harmoniously together in the hopes that several or all of these properties may be improved and thus relieve the present carrying charges, and that nothing shall be done or decisions made with respect thereto without consent of all."

This partnership was nothing more than a loose association to prevent discord in the development of the properties and to bring therein the trustee of beneficiaries who were minors. The purpose of the partnership, as stated by Lemm, who suggested it, "was to have some agreement in view of the fact that we had the interests of minor children involved, and I thought there should be something in writing linking all the owners together in the hopes that they could all work side by side and try to make something out of this property and get it improved."

Mr. Lemm and petitioner were the leading figures (with Mr. Lemm predominating) in this business. Just what special services petitioner performed is quite uncertain. However, they were paid for their services, as before stated. The trusts were as valid legal entities as any of the other co-owners. The trustee actively and effectively participated (as before set forth herein) in the improving of each of the three properties from which this income was derived.

There exists no basis for treating this as a "family" partnership. The evidence and findings warrant only one conclusion, which is that this partnership was formed in good faith for purely business purposes. The partnership is valid for income tax purposes.

*Conclusion.*

Neither the findings of the Tax Court nor the evidence in the record will support a decision that petitioner is liable for income taxes on the proportionate share of the trustee in the income from these three properties in 1942 and 1943. The case is remanded to the Tax Court for the sole purpose of re-computing the deficiency resulting from the adjustments, set forth in the deficiency letter, which were not contested here by petitioner.

Remanded with directions.

---

1. In fact, all of the co-owners of two of the properties at the time of the partnership contract were not parties thereto.