**HANSON v. BIRMINGHAM, Collector of Internal Revenue for District of Iowa.**

Civ. No. 604.

United States District Court
N. D. Iowa W. D.
July 29, 1950.

O. L. Dykstra, Des Moines, Iowa, for plaintiff.

T. E. Diamond, U. S. District Atty., Sioux City, Iowa, William B. Danforth, Asst. U. S. Dist. Atty., Sioux City, Iowa, Ruppert Bingham, Special Asst. to Atty. Gen., for defendant.

GRAVEN, District Judge.

A partnership income tax case in which the plaintiff seeks refund of federal income taxes for the calendar years 1943, 1944, and 1945 in the respective amounts of $17,-854.36, $11,877.85, and $13,607.63. The

plaintiff made timely request for a jury trial as to those issues properly triable to a jury. The parties stipulated that there were certain issues having to do with the relation of a trust to the partnership in question and the matter of consent to the admission of a claimed partner, which should be determined by the Court in advance of the trial of any issues to a jury. The parties stipulated to the facts that they deemed relevant to the issues involved.

For several years prior to January 1, 1920, one S. Hanson, of Boone, Iowa, had been engaged as sole owner in the whole-sale and retail lumber business in the City of Boone and in a number of other cities and towns in the State of Iowa under the name of S. Hanson Lumber Company.

On January 1, 1920, S. Hanson transferred a ¼ interest in that business to his wife, Emma Hanson; a ¼ interest to his son, R. M. Hanson, and a ¼ interest to his daughter, Elsie Hanson. He retained a ¼ interest for himself. A partnership was then formed composed of S. Hanson, Emma Hanson, R. M. Hanson and Elsie Hanson. Elsie Hanson subsequently married one William L. Olson. That partnership with those partners carried on the business of the partnership under the name of S. Hanson Lumber Company until February 23, 1923. The partnership agreement provided for an equal sharing in the profits and losses; that the active management of the business should be by S. Hanson and R. M. Hanson and that it should continue until dissolved by the mutual agreement of the parties. On February 23, 1923, S. Hanson died testate a resident of the State of Iowa. In his will he devised and bequeathed the property belonging to him as follows:

To Emma Hanson, his wife, an undivided ¼;

To R. M. Hanson, his son, a life estate in an undivided ¼ with remainder over;

To Elsie Hanson Olson, his daughter, a life estate in an undivided ¼ with remainder over;

To Emma Hanson and R. M. Hanson, as Trustees, an undivided ¼ to be held by them in trust for the benefit of Sigrid Hanson, a mentally incompetent daughter, during her lifetime with remainder over.

In his will S. Hanson referred to his ¼ interest in the partnership and expressed the will and desire that the business of the partnership be continued in the same manner as theretofore and that his ¼ interest which he had devised and bequeathed, as set out above, should remain in the business.

The will of S. Hanson was duly admitted to probate. Following the probate thereof, the interests in the partnership assets of S. Hanson Lumber Company were as follows:

Emma Hanson, an undivided 5/16 interest;

R. M. Hanson, an undivided 5/16 interest (1/16 as life tenant);

Elsie Hanson Olson, an undivided 5/16 interest (1/16 as life tenant);

R. M. Hanson and Emma Hanson, as Trustees for Sigrid Hanson, an undivided 1/16 interest therein.

The business of the partnership was carried on following the death of S. Hanson in the same manner as theretofore. In 1927 Emma Hanson and R. M. Hanson, executors of the estate of S. Hanson, made application to the District Court of Iowa in connection with the estate. The applicants, after stating that the business of the partnership had been carried on as desired by the testator in his will, indicated that questions had been raised by proposed purchasers of real estate from the partnership as to who might make proper conveyance thereof. On April 17, 1927, that Court entered an order declaring that the surviving partners of the S. Hanson Lumber Company and the legatees under his will who were then in esse had the right to convey and execute proper conveyances of any of the real estate owned by the S. Hanson Lumber Company.

Sometime following April 13, 1927, Emma Hanson died testate. Her will was duly admitted to probate. She willed and devised all her property to her son, R. M. Hanson, and her daughter, Elsie Hanson Olson, share and share alike. Thereupon the interests in the partnership assets of the

S. Hanson Lumber Company were as follows:

R. M. Hanson, an undivided 15/32 interest (2/32 as life tenant);

Elsie Hanson Olson, an undivided 15/32 interest (2/32 as life tenant);

R. M. Hanson, as Trustee for Sigrid Hanson, an undivided 1/16 or 2/32 interest.

On December 30, 1941, R. M. Hanson executed the following Indenture of Trust:

## "INDENTURE OF TRUST

### "KNOW ALL MEN BY THESE PRESENTS:

"That I, Reinhold M. Hanson (sometimes known as R. M. Hanson), of Boone County, State of Iowa, in order to provide for the security and general welfare of my two children, do hereby give, convey, transfer, assign and set over unto R. M. Hanson, Stella C. Hanson and F. L. Mackey of Boone County, State of Iowa, as Trustees, for benefit of my son Reinhold Melvin Hanson and daughter Joreen Ann Hanson, an undivided THIRTEEN-SIXTY-FOURTHS (13/64) interest in and to the partnership of S. Hanson Lumber Company; said property to be held by said Trustees and managed, controlled, used and disposed of in accordance with the following provisions made for their government:

"First. That the said Trustees shall hold all of the property (hereinafter called the Trust Fund) conveyed to them by this instrument, in trust for the purposes, with the powers and subject to the limitations hereinafter declared, for the benefit of my son Reinhold Melvin Hanson and my daughter Joreen Ann Hanson, and it is expressly declared that, as between the Trustees and beneficiaries herein, a trust, and not a partnership, is hereby created and neither the Trustees nor Reinhold Melvin Hanson and Joreen Ann Hanson shall ever be personally liable hereunder as partners of the S. Hanson Lumber Company, all such personal liability being retained and assumed by the Grantor herein and as an individual only.

"Second. The title of this trust shall be 'R. M. Hanson Trust' and the term 'Trustees' shall be deemed to include the original and all successor trustees.

"Third. The Trustees, shall, during the period of this trust, pay to, or for the benefit of, each of the beneficiaries thereof, such portion of the income therefrom as they shall deem necessary and proper for the support, education and maintenance of each of the beneficiaries in the comforts and sphere of life which is rightfully theirs. And in so doing, the Trustees shall have wide discretionary powers.

"Fourth. When Reinhold Melvin Hanson shall arrive at the age of Thirty years, the Trustees herein shall assign, transfer, and set over unto him one-half of the then Trust Fund and this trust, as to said Reinhold Melvin Hanson, shall cease and terminate.

"When Joreen Ann Hanson shall arrive at the age of Thirty years, the Trustees herein shall assign, transfer and set over unto her the remaining one-half of said Trust Fund and the trust, as to said Joreen Ann Hanson, shall cease and terminate.

"Should either Reinhold Melvin Hanson or Joreen Ann Hanson die before reaching the age of Thirty years, leaving no child or children surviving, then and in that event, the share of the one so dying shall go to the survivor of them, but if a child or children survive the one so dying, the otherwise share of the one so dying shall go to the child or children surviving, in equal shares, with right of survivorship, and this trust shall terminate when said child, or the youngest of them, if more than one, reaches the age of Thirty years, or, at the death of such a child, or the survivor of them if more than one, prior to attaining the age of Thirty years, in which case the administrators or executors of the deceased one shall be entitled to receive, forthwith, that portion of the Trust fund that would have gone to such a one had he or she lived to attain said age of Thirty years.

"Fifth. The Trustees herein shall have as full power and discretion, as if absolute owners, to invest and re-invest the Trust Fund, or any part thereof, including income therefrom, in real estate or personal property, including bonds and notes or obliga-

tions secured upon real estate; said Trustees shall also have full power and discretion to sell, transfer and convey, from time to time, any part or all of said Trust Fund, upon such terms and conditions as they see fit; said Trustees shall also have power, should the occasion arise, to borrow money, for such time and upon such conditions as they see fit and give security therefor. In general, said Trustees shall have full power to do all acts and things, which in their judgment, are necessary, proper, advantageous or expedient to promote the complete and successful execution of this trust and the interest of the beneficiaries thereunder; the Trustees having for all of the aforesaid purposes and for all purposes of sale, lease, mortgage, exchange, investment and reinvestment and any and all arrangements, contracts and dispositions of the trust property, or any part thereof, all and as full and discretionary powers and authority as if they were themselves the sole and absolute beneficial owners thereof in fee simple. The naming of any specific duties and powers herein shall not, however, be construed as limiting in any way the general powers of the Trustees.

"Sixth. The execution of all contracts, conveyances, transfers and all other instruments relating to the Trust Fund, or any part thereof, shall be made by all of the Trustees herein.

"Seventh. No purchaser from, or lender to the Trustees, shall be bound to make any inquiry concerning the validity of any sale, pledge, mortgage, loan or purchase purporting to be made by the Trustees, or be liable for the application of money paid or loaned.

"Eighth. The Trustees may act with or without a meeting and the action of a majority of the Trustees shall be valid and binding. The Trustees may adopt, for their conduct, such reasonable rules and regulations as are not inconsistent with the terms of this instrument.

"Ninth. The Trustees may employ such agents and attorneys as they may think proper and find expedient, and shall not be personally responsible for any misconduct, errors or omissions of such agents or attorneys employed and retained with reasonable care.

"Tenth. The Trustees shall keep full and proper books of account and records of their proceedings and doings and shall render an account of the trust at all reasonable and necessary times, and no trustee serving hereunder shall be obliged to give any bond, or have any liability except for the results of his own gross negligence or bad faith. Each Trustee hereunder shall receive such reasonable pay for services rendered, as the majority of the Trustees shall see fit to allow.

"Eleventh. Any Trustee hereunder may resign at any time by written instrument duly acknowledged and delivered to the remaining Trustees and such resignation shall thereupon become effective.

"Any vacancy in the office of Trustee, however occasioned, shall be filled by the remaining Trustees in office by an instrument in writing, signed and acknowledged and attached to the original of this instrument; such Trustee thus chosen shall signify acceptance by a written instrument duly acknowledged, and shall thereupon have all the rights, powers and duties of an original Trustee.

"The title of any outgoing Trustee shall vest in the remaining Trustees, and upon the filling of any vacancy, the title to the whole Trust Fund shall vest jointly in those who shall then be Trustees hereunder.

"Twelfth. Without in any manner limiting the powers, duties and discretions given to the Trustees by this instrument, this Trust shall be considered as being within the jurisdiction of the proper court, and should changed conditions or circumstances arise during the period of this trust of such a nature as to create doubt in the minds of the Trustees as to the best manner of carrying out this trust, said Trustees may apply to a court of equity for direction as to their powers, duties and obligations.

"Thirteenth. The assets of the S. Hanson Lumber Company, for the purpose of this transfer in trust, shall be as evidenced by the Inventory of the S. Hanson Lumber Company as of date December 31, 1941, and the real estate so owned by it on said date,

less any and all debts and liabilities owing by the said S. Hanson Lumber Company at the close of business on December 31, 1941.

"Fourteenth. The Trustees shall, in the administration of this trust, be ever mindful of the manner in, and purpose for, which the partnership of S. Hanson Lumber Company was created so that the intent of its founder, S. Hanson, deceased, as expressed in the Partnership Contract and his Last Will and Testament, shall prevail so long as practicable; said intent being that the interests of all the parties composing said partnership be kept together in said business and said business continued. Therefore, so much of the Trust Fund that shall now, or hereafter be, an interest in the business of S. Hanson Lumber Company, shall be allowed to remain in said business subject to the same management control and use as are the other interests in said partnership and all acts of said partnership, in the conduct of its business shall be binding upon the Trustees herein and the Trust Fund herein created, except as otherwise provided herein.

"Fifteenth. It is intended hereby that title to every item of property now, or hereafter, constituting the Trust Fund shall be vested solely in the Trustees, and the beneficiaries shall have no legal or equitable title, right or interest in or to any item thereof. The right of each beneficiary, his or her administrators, executors or heirs being, during the administration of the trust, limited to the income distributable hereunder and on the termination of the trust limited to the distributable proceeds of the Trust Fund itself.

"Sixteenth. This indenture is executed in six counterparts, each of which so executed shall be deemed to be an original and such counterparts shall together constitute but one and the same instrument.

"And Stella C. Hanson, wife of Reinhold M. Hanson, joins in the execution of this instrument for the purpose of waiving any right of dower, or other interest, she might otherwise have in the property covered by this conveyance.

"Signed and sealed at Boone, Boone County, Iowa, this 30th day of December, A. D., 1941.

R. M. Hanson
Stella C. Hanson"

The Trust Indenture was duly acknowledged. The trustees named therein accepted their appointments and since have been the duly qualified and acting trustees of that trust, which is referred to in the complaint and in the stipulation as the R. M. Hanson Trust. Stella C. Hanson, named therein as a Trustee, was and is the wife of R. M. Hanson. R. M. Hanson at all times since the death of S. Hanson has had the sole responsibility for the management of the business of the S. Hanson Lumber Company. Attached to the Trust Indenture is the following:

"Consent and Acceptance by
Partnership

"The S. Hanson Lumber Company, a partnership heretofore composed of R. M. Hanson and Elsie Olson, hereby acknowledges receipt of a copy of a Trust Indenture of date December 30, 1941, wherein R. M. Hanson conveys, in trust, an undivided THIRTEEN–SIXTY–FOURTHS (13⁄64) interest in and to the S. Hanson Lumber Company for the benefit of his two children, Reinhold Melvin Hanson and Joreen Ann Hanson, and said S. Hanson Lumber Company hereby consents to said transfer of interest and agrees to recognize the terms and conditions thereof and to so change its books and records to show such new ownership of interest. It is hereby agreed that such transfer of interest by R. M. Hanson shall not be construed as in manner terminating the partnership of S. Hanson Lumber Company but only as an enlargement of the ownership thereof for the benefit of additional descendants of its founder S. Hanson.

"Dated at Boone, Iowa, this ———— day of January, 1942.

S. HANSON LUMBER COMPANY
By R. M. Hanson
————————"

There was attached to the Trust Indenture an instrument entitled "Consent of

Partner" prepared for the signature of Elsie Hanson Olson but not signed by her.

The plaintiff claimed, and does claim, that for the years in question, 1943, 1944, and 1945, the net income of the partnership should be credited as follows:

R. M. Hanson, individually, 17/64;

Elsie Hanson Olson, individually, 30/64;

R. M. Hanson, Trustee for Sigrid Hanson, 1/16 or 4/64;

R. M. Hanson Trust, 13/64.

The Commissioner of Internal Revenue determined that the R. M. Hanson Trust was not a valid partner in the S. Hanson Lumber Company for federal income tax purposes during the years in question and held the plaintiff, R. M. Hanson, taxable on the share of partnership income (13/64) attributable to the R. M. Hanson Trust. This determination by the Commissioner resulted in deficiency assessments against the plaintiff in the respective amounts of $17,854.36 for the year of 1943, $11,877.85 for the year of 1944, and $13,607.63 for the year of 1945. The plaintiff paid those deficiencies with interest thereon, and on or about August 9, 1949, filed timely claims for refund. By letters dated February 10, 1950, the Internal Revenue Agent in Charge notified plaintiff that he proposed to recommend that said claims for refund be disallowed. Plaintiff brought this action on May 4, 1950, for refund of $43,339.84, with interest and costs as provided by law.

It is undisputed that a valid partnership known as the S. Hanson Lumber Company was formed in 1920 and that a valid partnership known as the S. Hanson Lumber Company has been in existence ever since and that during all of that time R. M. Hanson and Elsie Hanson Olson have been valid members of that partnership. The parties are in dispute as to whether the R. M. Hanson Trust became a valid member of that partnership for federal income tax purposes.

The issues between the parties are both factual and legal. The factual issue is as to the bona fides of the transaction under which 13/64 of the net income of the S. Hanson Lumber Company is allegedly taxable to the R. M. Hanson Trust under the rules laid down in the so-called family partnership cases. That factual issue is one properly triable to a jury and is not here involved. The legal issues are two in number. The defendant Collector asserts that the R. M. Hanson Trust was not, and is not, legally capable of being a valid member of the partnership and that, therefore, the trustees of that Trust could not enter into a valid partnership arrangement for and in behalf of the Trust. The defendant Collector further contends that even if the R. M. Hanson Trust were capable of so being it could not do so without the consent of all of the parties then comprising the partnership and that express consent of the trustee of the Sigrid Hanson Trust was lacking. The plaintiff asserts that the trustees had the power to, and could, make the R. M. Hanson Trust a valid partner in the S. Hanson Lumber Company for federal income tax purposes. The plaintiff further contends that the other parties to the partnership arrangement did impliedly consent to the R. M. Hanson Trust becoming a member of the partnership. In his complaint the plaintiff states that, "The R. M. Hanson Trust in the years of 1943, 1944, and 1945 was a partner in the S. Hanson Lumber Co." The parties stipulated that the Court should determine as a matter of law whether the R. M. Hanson Trust was, or could be during the years in question, a valid partner in the S. Hanson Lumber Company and whether the express consent of the trustee for Sigrid Hanson was necessary to the R. M. Hanson Trust becoming a member of the partnership.

On the question of the capacity of the R. M. Hanson Trust to be a partner, it would seem desirable to first consider some of the general rules of common law relating to trusts and trustees.

■ A trust has been defined as a fiduciary relationship with respect to property, subjecting the person by whom the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it. Restatement, Trusts, Section 2, p. 6. A trust relationship involves three elements: (1) a trustee; (2) a beneficiary; and (3) trust

property. Restatement, Trusts, Section 2, p. 13. The plaintiff does not contend that the intangible "fiduciary relationship" created by the trust indenture is the partner. His position in the matter of the R. M. Hanson Trust being a partner is that it is the trust property or trust estate which is the partner. The word "trust" is frequently used interchangeably with the words "trust estate" or "trust property" and such use sometimes gives rise to uncertainty. Therefore the word "trust" when used hereafter with reference to a partnership will refer to the trust estate or trust property.

The United States Supreme Court in the case of Taylor v. Davis, 1884, 110 U.S. 330, 334, 335, 4 S.Ct. 147, 150, 28 L.Ed. 163, stated: "A trustee is not an agent. An agent represents and acts for his principal, who may be either a natural or artificial person. A trustee may be defined generally as a person in whom some estate, interest, or power in or affecting property is vested for the benefit of another. When an agent contracts in the name of his principal, the principal contracts and is bound, but the agent is not. When a trustee contracts as such, unless he is bound no one is bound, for he has no principal. The trust estate cannot promise; the contract is therefore the personal undertaking of the trustee. As a trustee holds the estate, although only with the power and for the purpose of managing it, he is personally bound by the contracts he makes as trustee, even when designating himself as such. The mere use by the promisor of the name of trustee or any other name of office or employment will not discharge him. Of course, when a trustee acts in good faith for the benefit of the trust, he is entitled to indemnify himself for his engagements out of the estate in his hands * * *." The United States Supreme Court recently referred to and quoted the foregoing quotation. Greenough v. Tax Assessors, 1947, 331 U.S. 486, 494, 67 S.Ct. 1400, 1404, 91 L.Ed. 1621, 172 A.L.R. 329. In Bogert on Trusts and Trustees, 2d Ed., 1942, § 113, pp. 374, 375, in discussing the general rules applicable to a contract entered into by a trustee, it is stated: "The question then arises as to the liability on such a contract and the remedies of the creditor. The question is decided by careful consideration of the identity of the person who made the promise. The only legal person recognized by the court of law in which the promise will be enforced is the trustee as an individual, and not in his representative capacity. If Henry Smith is trustee under the will of John Brown, and Smith contracts for work and materials and promises to pay a certain sum therefor, the court of law regards Henry Smith as the person making the promise and liable upon it. It does not recognize Henry Smith, as trustee, as a distinct legal person at all. The trust estate or trust is certainly not a person in the eye of the law, and the beneficiaries of the trust did not make the contract. The trustee is not their agent. They are not liable as principals. Smith is the only legal entity making the promise and liable upon it. Whether his liability is permanent or will finally be shifted to the trust is of no concern to the law court. It leaves that matter to a court of equity. * * * An action at law cannot be maintained against the trustee as such, or in his representative capacity, and collection cannot be had out of the trust property after judgment obtained." Trusts were developed by courts of equity. 54 Am.Jur., Trusts, Sec. 3. They are regarded as deriving their existence from those courts. McCoy v. McCoy, 1911, 30 Okl. 379, 121 P. 176, Ann.Cas.1913C, 146. It has been said that, "Trusts are children of equity; and in a Court of Equity they are at home, under the family rooftree, and around the hearth of their ancestors." Bleckley, J., 52 Case and Comment 20 (November-December 1947).

In cases in which tort liability is asserted against a trustee the general rule is that any judgment obtained is collectible out of his private property and not out of the trust estate or trust assets. 26 R.C.L., Trusts, Sec. 178; 3 Bogert, Trusts and Trustees, 1935, § 731, p. 527; Kirchner v. Muller, 1939, 280 N.Y. 23, 19 N.E.2d 665, 127 A.L.R. 681. The courts are in conflict as to the right of a trustee to reimburse-

42

ment for tort liability and the extent of the reimbursement. See 23 Iowa Law Review (1938) 669, 670.

It is well recognized law that where there is more than one trustee they form but one collective trustee. 26 R.C.L., Trusts, Sec. 196; Nichols v. Pospiech, 1939, 289 Mich. 324, 286 N.W. 633. It is held that a trustee is presumed to know the obligations and limitations connected with his office. In re Trusteeship of Stone, 1941, 138 Ohio St. 293, 34 N.E.2d 755, 760, 134 A.L.R. 1306, 1319. It is a general rule that a trustee cannot delegate his duties and his power to contract to third persons. 2 Scott on Trusts (1939) Sec. 184; Underhill, The Law Relating to Trusts and Trustees (9th Ed. 1939) p. 331. Unbridled discretionary powers in a trustee negative the existence of a trust relationship. Ponzelino v. Ponzelino, 1947, 238 Iowa 201, 26 N.W.2d 330, 331.

The beneficiaries of a trust are not personally subject to liabilities incurred in connection with the administration of the trust. Restatement, Trusts, Secs. 274–277; 2 Scott on Trusts (1939) Secs. 175, 176. In cases where parties designated as beneficiaries of a trust have been held personally liable for such obligations it is usually on the ground that the arrangement between the parties was not a trust but a partnership and it is often stated in such cases that the so-called trustees are "mere agents" of the beneficiaries. 2 Bogert, Trusts and Trustees, 1942, § 300, p. 991. In 2 C.J.S., Agency, § 3, p. 1035, it is stated as follows: "The agent represents and acts for his principal, and his acts are binding on the principal, but a trustee has no principal and cannot render the creator or beneficiary of the trust liable for his contracts." In the Indenture of Trust in the present case it was expressly stated that the relation between the trustees and the beneficiaries was "a trust, and not a partnership."

The nature of the interest of a beneficiary in a trust has been the subject of frequent judicial consideration. In the fairly recent case of First & American Nat. Bank of Duluth v. Higgins, 1940, 208 Minn. 295, 293 N.W. 585, 594, it is stated: "The beneficiary may have a vested interest in the trust without having title, legal or equitable, to any specific property held in trust. The question has been argued whether the right of a beneficiary is a mere chose in action consisting of a right in personam against the trustee to compel him to perform the trust or whether his rights are of a proprietary equitable interest in the corpus itself. The authorities are arrayed in hopeless conflict. I Bogert, Trusts and Trustees, § 183, [p. 515]; 1 Scott on Trusts, § 130."

It would seem desirable next to consider some of the general rules of common law relating to partnerships. A partnership is contractual in nature, a contract being essential to the formation of a partnership. 40 Am.Jur., Partnership, Sec. 20; 20 R.C.L., Partnership, Sec. 4. Every partner has a fiduciary relationship with every other partner. 40 Am.Jur., Partnership, Sec. 128. Partnership involves co-ownership as contrasted with the representative ownership which is a feature of trust relationships. 1 Bogert, Trusts & Trustees, 1935, § 17, p. 65. In the case of Commissioner of Internal Revenue v. Tower, 1946, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670, 164 A.L.R. 1135, the United States Supreme Court defined a partnership as follows, page 286 of 327 U.S., page 535 of 66 S.Ct.: "A partnership is generally said to be created when persons join together their money, goods, labor, or skill for the purpose of carrying on a trade, profession, or business and when there is community of interest in the profits and losses." The Court cited Ward v. Thompson, 22 How. 330, 333, 334, 16 L.Ed. 249; Meehan v. Valentine, 145 U.S. 611, 618, 12 S.Ct. 972, 36 L.Ed. 835 in support of this definition. This definition of a partnership was cited with approval in the majority opinion in Commissioner of I. R. v. Culbertson, 1949, 337 U.S. 733, 740, 69 S.Ct. 1210, 1213, 93 L.Ed. 1659. See also, Lusthaus v. Commissioner, 1946, 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679. There are numerous definitions of partnership but the definition contained in the Supreme Court cases referred to above would seem to be in accord with

the usual definitions of partnership. 40 Am.Jur., Partnership, Sec. 2; 20 R.C.L., Partnership, Sec. 2.

A contract of partnership is in effect one of mutual agency, each party acting as principal in his own behalf and as agent for his co-partner. 40 Am.Jur., Partnership, Sec. 136; 20 R.C.L., Partnership, Sec. 94; Latta v. Kilbourn, 1893, 150 U.S. 524, 543, 14 S.Ct. 201, 37 L.Ed. 1169; Schumann-Heink v. Folsom, 1927, 328 Ill. 321, 159 N.E. 250, 253, 58 A.L.R. 485. In 1 Mechem, Agency (2d Ed. 1914) Sec. 185, it is stated: "It is one of the fundamental principles in the law of partnership, that, within the scope of the partnership business, each partner is the agent of all the other partners for the transaction of the partnership affairs, and his acts are the acts of all." Each partner possesses equal and general power and authority in partnership matters. Kimbro v. Bullitt, 1860, 22 How. 256, 63 U.S. 256, 266, 16 L.Ed. 313.

In many cases there are substantial benefits and advantages in carrying on business by means of a partnership and the rights of a partner in and to the fruits of the partnership are substantial and valuable. However, being a partner can also have its disadvantages. Since a partnership agreement is in effect a contract of mutual agency, each partner is made jointly, and generally, severally, liable for the contractual obligations assumed and the tort liabilities incurred by the other partners in the course of, and within the scope of, the partnership business. 40 Am.Jur., Partnership, Secs. 136, 152, 190. Each partner is individually liable in solido for the partnership obligations. 40 Am.Jur., Partnership, Sec. 189. Such individual liability is primary and direct. Francis v. McNeal, 1913, 228 U.S. 695, 699, 700, 33 S.Ct. 701, 57 L.Ed. 1029, L.R.A. 1915E, 706. The claim of a partnership creditor for the satisfaction of a claim against the partnership extends to all of the property of all of the members of the firm. Tucker v. Oxley, 1809, 5 Cranch 34, 9 U.S. 34, 40, 3 L.Ed. 29. The United States Supreme Court has stated that the liability of a partner for the obligations of the partnership is, "unlimited personal liability." Merchants' National Bank of Cincinnati v. Wehrmann, 1906, 202 U.S. 295, 301, 26 S.Ct. 613, 614, 50 L.Ed. 1036. Such liability being in personam it has no in rem or property limitation and extends to property afterwards acquired by any partner during the legal life of the obligation. The courts will not sanction arrangements attempting to give persons the advantages and benefits of a partnership without the assumption of the responsibilities connected therewith. 40 Am.Jur., Partnership, Sec. 44. If the parties have the rights of partners, they have the duties imposed by law on partners. Jackson v. Hooper, 1910, 76 N.J.Eq. 592, 599, 75 A. 568, 571, 27 L. R.A.,N.S., 658. In the case of Thompson v. Schmitt, 1925, 115 Tex. 53, 274 S.W. 554, at pages 559, 560, the Court held that it was not legally permissible to set up a partnership composed of non-liable partners save to the extent of their respective capital contributions. A partner may restrict his liability for partnership obligations to his capital contribution by means of a limited partnership arrangement. Such partnerships were unknown to the common law and they are solely creations of local legislative bodies. 40 Am.Jur., Partnership, Sec. 505. Iowa has enacted the Uniform Limited Partnership Act, Chapter 545, Code of Iowa, 1950, I.C.A., but the partnership in question in this case was not organized under the provisions of that Act. Iowa has not enacted the Uniform Partnership Act.

In connection with the problems presented in this case it is necessary to consider who has the capacity to be a partner under the general rules of common law. A partnership is a contractual relation and in order for a person or entity to be a partner he or it must be capable of entering contractual relations. 40 Am.Jur., Partnership, Sec. 22. At common law a married woman could not be a partner. 20 R.C.L., Partnership, Secs. 16, 18; Crane on Partnership (1938) Sec. 8, p. 32. In those states where Married Women's Enabling Acts have been passed a married woman generally has a right to enter into part-

nership relations. 40 Am.Jur., Partnership, Sec. 22. Iowa has a Married Women's Enabling Act. Section 597.18, Code of Iowa, 1950, I.C.A. An infant may be a partner. 43 C.J.S., Infants, § 82, p. 198. His contract of partnership and the liabilities arising thereunder are subject to avoidance or disaffirmance. 40 Am.Jur., Partnership, Sec. 22; 20 R.C.L., Partnership, Sec. 19. An executor or administrator of the estate of a deceased partner may under certain conditions and in certain situations be a partner in the firm of which his decedent was a member. 40 Am. Jur., Partnership, Sec. 287. Such membership is usually permitted only in order to facilitate the sale of the partnership business as a going concern. 3 Bogert, Trusts and Trustees, 1935, § 573, p. 517. Where executors or administrators do become members in the firm of which their decedent was a member, they do so in their personal capacity and they are personally liable for the partnership debts. 40 Am.Jur., Partnership, Sec. 290; 20 R.C.L., Partnership, Sec. 229. In such cases a new partnership is created. Insley v. Shire, 1895, 54 Kan. 793, 801, 39 P. 713, 45 Am.St.Rep. 308. In a few states there are special statutory provisions covering the matter of the substitution of personal representatives of a deceased partner in place of the decedent. See 35 Iowa Law Review (1950) p. 533, footnote 4. In general, the duties of an executor or administrator as contrasted with those of a trustee are limited to the winding up of the estate and are temporary in character. Restatement, Trusts, Sec. 6, p. 23. The carrying on of a partnership business by an executor or administrator is stated to be "fundamentally alien" to his normal functions. 3 Bogert, Trusts and Trustees, 1935, § 574, p. 519. Corporations, including banking corporations, are entities which have capacity to enter into contracts within the scope of their corporate activities. While the authorities are not in entire agreement, the more general common law rule is that a corporation may not become a member of a partnership. 13 Am. Jur., Corporations, Sec. 823; 20 R.C.L., Partnership, Sec. 20. Kasishke v. Baker, 10 Cir., 1944, 146 F.2d 113, certiorari denied, 1945, 325 U.S. 856, 65 S.Ct. 1185, 89 L.Ed. 1976. 1 Rowley, The Modern Law of Partnership (1916) 197. The reason frequently given for such exclusion is that the principal-agent and agent-principal relationship of partners is incompatible with control and management of the corporation and its property by its officers and stockholders. 6 Fletcher, Cyclopedia Corporations (Perm.Ed. 1950) Sec. 2520; Mallory v. Hanaur Oil Works, 1888, 86 Tenn. 598, 8 S.W. 396; Hackett v. Multnomah Ry. Co., 1885, 12 Or. 124, 6 P. 659, 53 Am.St. Rep. 327; Whittenton Mills v. Upton, 1858, 76 Mass. 582, 10 Gray 582, 71 Am.Dec. 681. For criticism of this view, see The Corporate Partner by Scott Rowley, 14 Minn. L.Rev. 769 (1930). In the case of Fechteler v. Palm Bros. & Co., 6 Cir., 1904, 133 F. 462, at page 465, the United States Court of Appeals for the Sixth Circuit, in connection with the question of a corporation being a member of a partnership, stated: "The agency of each partner for the partnership is inconsistent with the management of the corporation by its stockholders through directors and officers chosen only by themselves." It might be noted parenthetically that Section 2 of the Uniform Partnership Act provides that the term "Person" includes individuals, partnerships, corporations, and other associations. It is well established that a banking corporation cannot be a member of a partnership. 4 Michie, Banks & Banking (Perm.Ed. 1931) Sec. 43, p. 48. A bank may not become a member of a partnership even where it takes over the interest of a partner in satisfaction of a debt owing to it. Merchants' National Bank of Cinn. v. Wehrmann, 1906, 202 U.S. 295, 26 S.Ct. 613, 50 L.Ed. 1036. The United States Supreme Court was of the view in the case just cited that it was beyond the power of a bank to assume the unlimited personal liability of a partner.

Certain other fundamental common law principles regarding partnerships are to the effect that if the essential elements of a partnership are not present, then a partnership will not be declared even though the parties designate their arrangements as such. 40 Am.Jur., Partner-

ship, Sec. 43. Similarly, if a person or entity is not capable of being a partner, then designating he or it as such would not make such person or entity a valid partner.

The plaintiff in the present case does not claim that either the trustees or the beneficiaries of the R. M. Hanson Trust are the partners but rather that the third element of the trust relationship, the trust property, is a member of the partnership known as the S. Hanson Lumber Company. As heretofore noted, under the common law there are a number of recognized legal tests and legal concepts concerning the capacity of persons and entities to become partners. One of those tests is that in order for a party to be a partner such party must be capable of contracting or promising to assume the relation of a partner and the liabilities growing out of or connected therewith. The United States Supreme Court has recognized that a trust estate cannot promise and therefore a contract entered into by the trustee is his personal undertaking and not that of the trust estate. Taylor v. Davis, supra.

Another common law concept of a partner is that he must be capable of being a party to an agent-principal, principal-agent relationship. A trust estate as such could not be an agent, for it has no principal. Another common law concept in regard to the status of a partner is that of his unlimited personal liability for the partnership obligations which is not in the nature of an in rem liability limited to certain property. The liability of a trust estate as such for partnership obligations would in effect be a limited, in rem liability. A trust estate partner could presumably receive an unlimited share of the profits of the partnership but would only share in the losses to the extent of the property contained in the trust estate. Thus it would seem that a trust estate partner would in effect be an in rem partner, a status which is unknown to the common law. If trust estate partners are recognized, then it might be possible to form a partnership consisting only of trust estate partners with liability for partnership obligations limited to the trust property. Such an arrangement would in effect be an in rem partnership which is also unknown to the common law. The encyclopediac treatises Corpus Juris, Corpus Juris Secundum, Ruling Case Law and American Jurisprudence in the sections dealing with partnerships and trusts make no reference to the possibility of a trust or a trustee being a member of a partnership. The following text books make no reference to the possibility of a trust or a trustee being a member of a partnership: Bogert on Trusts, 2d Ed. 1942; Bogert, Trusts and Trustees, 7 vol., 1935; Restatement of The Law of Trusts, 2 vol.; Scott on Trusts, 4 vol. (1939); Underhill, The Law Relating to Trusts and Trustees (9th Ed. 1939); Keeton, The Law of Trusts (4th Ed. 1947); Lindley on Partnership (10th Ed. 1935); Gilmore on Partnership (1911); Burdick on Partnership (2d Ed. 1906); Teller, Partnership (1949); Crane on Partnership (1938); Rowley, The Modern Law of Partnership, 2 vol. (1916). The total absence from legal works purporting to cover the entire field of the common law of partnerships and trusts of any reference to the possibility of a trust being a member of a partnership would be indicative of the fact that a trust as a partner was unknown to the common law. The plaintiff has cited no cases and the authors of the legal works referred to cite no cases dealing with the possibility of a trust being a partner under the common law. The reason for such paucity of authority on this question could be that it was generally assumed that it would be incompatible and inconsistent with and alien to common law concepts for a trust to be a partner. In Mechem, Elements of The Law of Partnership, (2d Ed. 1920), in Sec. 55, the author deals with the general subject of agents as partners. That section contains the following statement: "An agent, trustee, administrator, and the like, may be a partner. Unless he excluded personal liability by the terms of the contract, he would usually be individually liable for the partnership debts, though he would ordinarily have a remedy for reimbursement or indemnity against the parties by whose authority and on whose account he acted

as partner." In connection with that section, the author cites two cases. Those two cases deal with the question of an agent as a partner and not with the question of a trust or trustee as a partner. There are no Iowa statutes and there are no decisions of the Iowa Supreme Court relating to the capacity of a trust to be a member of a partnership. Therefore, it may be assumed that the Iowa law is in accord with the common law.

It is the view of the court that under the common law a trust does not have the legal capacity to become a member of a partnership and that the same is true under the Iowa law. Therefore, if there is such a thing as a trust partner, it is peculiar to and indigenous to that field of law which might be termed the Internal Revenue Code field of law and it exists in that field and in no other field.

At one time the Board of Tax Appeals was of the view that the Commissioner of Internal Revenue could not question the validity of a partnership for federal income tax purposes because he was not a party in interest. Isaac W. Frank Trust of 1927 v. Commissioner, 1941, 44 B.T.A. 934, 942. On appeal to the Third Circuit this case was remanded pursuant to stipulation of the parties. See, 1943, P–H, Par. 61,028. However, the view that the Commissioner can not challenge the validity of partnerships has been authoritatively repudiated, and there is no question in respect to that matter in the present case.

Since the trust here in question could not be a valid partner under the local Iowa law, the question is presented as to the applicability of local state law to the matter of the validity or invalidity of partnerships for federal income tax purposes. That question is not the same as the question of the applicability of the general rules of common law, since a partnership might meet all of the tests and concepts of a partnership under such rules and yet not meet the requirements of the local state laws. A partnership might also meet the requirements of the local state law and yet not meet the tests and concepts of a partnership under the general rules of common

law. See, e. g., Poplar Bluff Printing Co. v. Commissioner, 8 Cir., 1945, 149 F.2d 1016, 1018. It is now well and thoroughly established that the fact that a partnership might be valid under the local state law is not determinative of its status for federal income tax purposes since Congress may select its own legal and factual criteria for determining the validity of a partnership for that purpose. Commissioner of I. R. v. Tower, 1946, 327 U.S. 280, 287, 288, 66 S. Ct. 532, 90 L.Ed. 670, 164 A.L.R. 1135; Kohl v. Commissioner, 8 Cir., 1948, 170 F. 2d 531, 534, certiorari denied, 1949, 337 U. S. 956, 69 S.Ct. 1528, 93 L.Ed. 1756, rehearing denied, 1949, 338 U.S. 839, 70 S.Ct. 839, 70 S.Ct. 33, 94 L.Ed. 53. While it is clear from the authorities that the fact that a partnership is valid under the local state law is not determinative of its status for federal income tax purposes, yet it is not clear from the authorities as to what the rule is where a partnership is invalid or not recognized under the local state law. In the case of Commissioner v. Tenney, 1 Cir., 1941, 120 F.2d 421, a wife purported to enter into an agreement in the nature of a partnership with her husband. Under the local state law a married woman could not contract with her husband. The Court held that the agreement was unenforceable and refused to recognize the partnership for federal income tax purposes. In Ellery v. Commissioner, 1944, 4 T.C. 407, a husband and wife formed a partnership to conduct a business which was illegal under the state law. The Tax Court refused to give the partnership recognition for federal income tax purposes. In Commissioner v. Barnes' Estate, 1927, 7 B.T.A. 924, affirmed, 3 Cir., 1929, 30 F.2d 289, a family partnership was held valid for federal income tax purposes even though there was no compliance with the local state statutes relating to the registration of the partnership name. In the case of Thompson v. Riggs, 8 Cir., 1949, 175 F.2d 81, 82, the United States Court of Appeals for the Eighth Circuit stated by way of dictum: "Where a partnership relation does not exist under State law, even though attempted, the problem of 'good faith' is hardly applicable because it is not of importance. The absence of such part-

nership relation is determinative." The contention that an organization may have existence only for federal income tax purposes has been repudiated by a number of courts. See, e. g., Slifka v. Commissioner, 2 Cir., 1950, 182 F.2d 345, 346; Zander v. Commissioner, 5 Cir., 1949, 173 F.2d 624, 626, 627; Greene v. Commissioner, 1946, 7 T.C. 142, 150, 151. The United States Supreme Court has not passed upon the question as to what significance is to be given to the matter of invalidity under local state law in determining the validity of a partnership for federal income tax purposes. The United States Supreme Court might hold that a partnership which was illegal or not recognized by the local state law would as a matter of law be given no recognition for federal income tax purposes, or it might hold that the matter of illegality or non-recognition under the local state law was a factual matter to be considered along with other factual matters in determining the question of good faith and bona fide intent.

In cases other than those referred to the courts have indicated that local state law may be of assistance in arriving at a determination of the status of a partnership for federal income tax purposes. Belcher v. Commissioner, 5 Cir., 1947, 162 F.2d 974, 976, certiorari denied, 1947, 332 U.S. 824, 68 S.Ct. 165, 92 L.Ed. 399; Montgomery v. Thomas, 5 Cir., 1944, 146 F.2d 76, 80; Larson v. Kraemer, D.C.Conn.1949, 84 F.Supp. 313, 314; Western Construction Co. v. Commissioner, 1950, 14 T.C. 453, 472. The applicability or the inapplicability of state law in partnership income tax cases is not clear. Note, The Operation of the Entity Concept of Partnership in Federal Income Taxation, 97 University of Pennsylvania Law Review (1948) 52, 66.

As noted above, the fact that a trust-partnership relation is not recognized under the Iowa law could be determinative that it is not entitled to recognition for federal income tax purposes. However, since the relation between the illegality or non-existence of a partnership under the local state law and its status for federal income tax purposes is not clear, other matters should be considered.

There have been a number of cases arising under the Internal Revenue Code involving partnerships composed of individuals on the one hand and the trustees, beneficiaries or the trust corpus of a trust relationship on the other. Since these cases usually involve members of the same family group, there is often involved not only the doctrine of the family partnership cases, but also the doctrine of Helvering v. Clifford, 1940, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788, relating to the amount of control retained by the settlor of a trust over the trust property or the income from the trust. An example of a case of this type in which the Clifford doctrine was held to be controlling is Eisenberg v. Commissioner, 1945, 5 T.C. 856, affirmed, 3 Cir., 1947, 161 F.2d 506, certiorari denied, 1947, 332 U.S. 767, 68 S.Ct. 76, 92 L.Ed. 352, where several partners conveyed to themselves as trustees for their minor children one-half of their respective interests in a partnership. Apparently the trusts were the purported partners rather than the trustees of said trusts or the beneficiaries, but the Tax Court below made no finding as to the nature of the partnership, holding the original partners taxable on the entire income from the business under the Clifford doctrine. The United States Court of Appeals for the Third Circuit affirmed on this ground. See also, Losh v. Commissioner, 1943, 1 T.C. 1019, affirmed, 10 Cir., 1944, 145 F.2d 456; Armstrong v. Commissioner, 1943, 1 T.C. 1008, reversed and remanded 10 Cir., 1944, 143 F.2d 700; Scherer v. Commissioner, 1944, 3 T.C. 776. Cf. Tyson v. Commissioner, 8 Cir., 1944, 146 F.2d 50. The arrangements were upheld in the Armstrong and Scherer cases. The Clifford doctrine is not involved in the present case at this time. In some of the cases hereafter referred to the beneficiaries were regarded as being the members of the partnership. In other cases the trustees were so regarded, and in still others the trust estate was regarded as the partner. In one case, Thompson v. Riggs, infra, the trial court instructed the jury as a matter of law that the trustees were the partners and in the affirming opinion on appeal it was stated that the trusts were the partners. In accounts of earlier days there is described an

activity in which use was made of three half spheres and a small circular object. One of the participants in the activity was to ascertain under which of the three half spheres the small circular object was to be found. It appears that the small circular object possessed the character of elusiveness and that its location frequently presented a matter of some difficulty. In the cases involving a trust relationship being associated in or with a partnership relation the matter as to whether the partner is to be found in the trustee, in the beneficiary or in the trust property has somewhat similar elusiveness.

In the cases next referred to family partnership-trust arrangements were held invalid for federal income tax purposes without any discussion as to the matter of the capacity of a "trust" or a trustee to be a partner. Zander v. Commissioner, 5 Cir., 1949, 173 F.2d 624 (father set up a partnership between himself individually and as trustee for his minor children—partnership was held invalid on the ground that the trust was really the alter ego of the father and was just a conduit through which money was transferred from one pocket to the other, with both pockets belonging to the father); Kohl v. Commissioner, 8 Cir., 1948, 170 F.2d 531 (a partnership between a husband and trustees for members of his family was held invalid as the Court found that the grantor completely dominated both the trust estate and the partnership); Economos v. Commissioner, 4 Cir., 1948, 167 F.2d 165, certiorari denied, 1948, 335 U.S. 826, 69 S.Ct. 53, 93 L.Ed. 380, rehearing denied, 1949, 335 U.S. 905, 69 S.Ct. 404, 93 L.Ed. 439 (an alleged partnership between a wife operating a business and her sister as trustee for her children was held invalid on the ground that there was no real change in the economic situation of the group or in the control or management of the business); Dawson v. Commissioner, 6 Cir., 1947, 163 F.2d 664 (partnership between a husband and wife individually and the wife as trustee for their minor children was held to be a superficial arrangement not changing the husband's economic interest in the business); Belcher v. Commissioner, 5 Cir., 1947, 162 F.2d 974 (partnership between a husband and wife individually and the wife as trustee for their minor children held invalid as the arrangement appeared to be one entered into solely for the reduction of income taxes); Hash v. Commissioner, 1945, 4 T.C. 878, affirmed, 4 Cir., 1945, 152 F.2d 722, certiorari denied, 1945, 328 U.S. 838, 66 S.Ct. 1013, 90 L.Ed. 1614, rehearing denied, 1946, 328 U.S. 879, 66 S.Ct. 1340, 90 L.Ed. 1647 (a husband and wife as individuals and also as trustees for their minor children attempted to enter into a partnership agreement which was held invalid as there had been no real change in the economic status of the parties); Losh v. Commissioner, 10 Cir., 1944, 145 F.2d 456 (trust agreement whereby father was designated trustee of partnership interests for his children was held to have effected no substantial change in the economic status of the parties); Moore v. Commissioner (1946) 7 T.C. 1250, remanded pursuant to stipulation of parties 6 Cir., 1949, 176 F.2d 311 (an arrangement whereby partnership interests were conveyed to trustees for the grantor's children was held to lack reality for federal income tax purposes); Alexander v. Commissioner (1946) 6 T.C. 804 (trust indenture wherein a husband declared himself trustee of a 1/4 interest in his business for his wife was held to have effected no change in the investment, management, or control of the business); Benson v. Commissioner (1946) 6 T.C. 748, affirmed, 5 Cir., 1947, 161 F.2d 821 (an alleged partnership between a husband and his wife as trustee for their minor children was held to be merely an arrangement whereby it was sought to divide taxes). A recent case illustrative of some of the confusing language regarding whether the "trust" or the trustee is the partner is that of Feldman v. Commissioner (1950) 14 T.C. 17. In that case the Tax Court held the family partnership-trust arrangement invalid for federal income tax purposes on the ground that the father-grantor kept control of the business and there was no contribution of services by the trustee for the minor son which could be segregated from the services of the trustee in his individual capacity as partner. It is not readily apparent from the language used by the Tax Court in this case whether the

"trust" or the trustee was the alleged partner. On this point see in particular the dissenting opinion by Judge Black, 14 T.C. pp. 26, 27 et seq.

In Maiatico v. Commissioner (1949) 12 T.C. 146, reversed and remanded, D.C.Cir., 183 F.2d 836 a partnership agreement was entered into between a husband, his wife as trustee for their minor children and several third parties. The Tax Court refused to recognize the wife as trustee as a member of the partnership for federal income tax purposes. The United States Court of Appeals for the District of Columbia reversed the Tax Court stating that from an analysis of the trust instruments, the circumstances surrounding their creation, and the operation under them, the "trusts" were valid entities for income tax purposes. The Court of Appeals pointed out that this was not a "family" partnership and the evidence and findings warranted no other conclusion but that this partnership was formed in good faith for purely business purposes and the "trusts" were as valid legal entities as any of the other co-owners.

In Woosley v. Commissioner (1946) P-H, T.C.Memo.Dec., Par. 46,283, affirmed on this point, 6 Cir., 1948, 168 F.2d 330, a husband and wife individually, the wife as trustee for their two minor children, and several third parties entered into a partnership agreement. The Tax Court held the husband taxable on the income from the partnership attributable to the "trusts" on the ground that the "trusts" were required to render no services under the partnership agreement and they rendered none in fact through the wife or otherwise, merely participating in the business to the extent of capital which they had received from the husband contemporaneously with the setting up of the partnership arrangement. The Tax Court stated (p. 46,977), "This is not enough to create in the trusts a partnership interest which may be recognized for Federal income tax purposes, * * *" The United States Court of Appeals for the Sixth Circuit indicated that the Tax Court had correctly resolved the trusteeship issue.

In the cases next referred to family partnership-trust arrangements were held to be valid for federal income tax purposes. In most of them there is no discussion as to the capacity of a "trust" or a trustee or a beneficiary to be a partner.

In Armstrong v. Commissioner, 10 Cir., 1944, 143 F.2d 700, two minor children who were beneficiaries of a trust were apparently given the status of partners for federal income tax purposes. The controversy in that case was as to the control retained and exercised by their father as settlor-trustee.

In Rose v. Commissioner, 1931, 22 B.T.A. 1334, reversed and remanded, 6 Cir., 1933, 65 F.2d 616, one Rose executed a document declaring that he held certain property in trust for his wife and two daughters. Included in that property was his interest in a certain partnership. The United States Court of Appeals for the Sixth Circuit held that "the effect" of the document was to constitute the beneficiaries partners in the partnership.

In Thomas v. Feldman, 5 Cir., 1946, 158 F.2d 488, a "trust" was held to be a valid limited partner in two limited partnerships organized with the husband-grantor as the general manager of the business. The dissenting opinion contained a statement that the creation of the trust and the partnership were legal in form but there was no explanation of the basis upon which such statement was made. Cf. Western Construction Co. v. Commissioner, 1950, 14 T. C. 453 (limited family partnership held bona fide partnership and not taxable as a corporation).

In the case of Ives v. Commissioner, 1934, 29 B.T.A. 822, there had been a partnership composed of two partners doing business in the State of New York. One partner transferred his interest in the partnership to a trustee for the benefit of his wife and children and the other partner transferred his interest in the partnership to trustees for a similar purpose. The business was then carried by a so-called "partnership of trustees." The Board of Tax Appeals stated (p. 832) that it had previously recognized, "that in the State of New York a valid partnership may exist with a trustee as one of the partners." The Board held that

the settlors were not taxable on the income from the partnership. It is not clear whether the Board regarded the trustees or the beneficiaries as the partners.

A wife as trustee for minor children was held to be a member of a partnership for federal income tax purposes in Scherer v. Commissioner (1944) 3 T.C. 776; Oakley v. Commissioner, 1931, 24 B.T.A. 1082, and in Reeb v. Commissioner, 1927, 8 B.T.A. 759. Cf. Moyer v. Commissioner, 1937, 35 B.T.A. 1155.

In Miller v. Commissioner (1949) P-H, T.C.Memo.Dec., Par. 49,001, rev'd in part and remanded, 6 Cir., 183 F.2d 246, a husband, wife and the husband's father transferred interests in a partnership to the husband and wife as trustees for their minor children. The Tax Court held that, "the trusts established by petitioner and his wife for their minor children were not partnership interests," but that, "the trusts established by petitioner's father for the children resulted in valid partnership interests." The United States Court of Appeals for the Sixth Circuit indicated that the purport of the trust arrangements, "was to divide the business between the petitioner and his wife and the three children, who were considered partners through the trustees." Since the husband and wife had retained the right to use the trust corpus and income as if they were the owners, the Court of Appeals remanded to the Tax Court with directions that that Court should make findings as to whether there was a real intent on the part of the grantors to transfer partnership interests and whether these trusts did anything other than multiply in form a single economic unit.

There are a number of cases in which the question of the validity for federal income tax purposes of a family partnership-trust arrangement has been submitted to a jury under instructions. In Mallary v. Allen [1] (D.C.M.D.Ga.1947), a jury returned a verdict holding a partnership composed of a husband and wife individually and the wife as trustee for four children, valid for federal income tax purposes. The trial court instructed in part as follows (p. 12,963):

"Court: Well, I thought I covered that, but if I didn't (to the jury) a trust may be a partner in a business, just as an individual." There was no other reference to the authority under which the above instruction was given.

In Hager v. Kavanagh [1] (D.C.W.D.Mich. 1947) a husband formed a limited partnership with himself and another person as general partners and his wife and two trustees for their minor children as limited partners. The jury found this was a bona fide organization for federal income tax purposes. Included among the instructions by the trial court to the jury was the following (p. 12,156):

"You may consider the fact that in the organization of the partnership the wife and the trustees of the two children were made limited partners, and that, as limited partners, they could not be held personally liable for partnership indebtedness."

In Stanback et al. v. Robertson [1] (D.C. M.C.N.Carolina 1949) a limited family partnership was established with two individuals as general partners and trustees for the wife and the two children of each of the general partners as limited partners. The trial court's instructions to the jury regarding the right of trustees to be partners were very similar to those given by the trial court in Riggs v. Thompson, set out infra. The jury in the Stanback case found that the trustees contributed no original capital, did not participate in the management and control of the business and performed no vital services and returned a verdict holding the limited partnership invalid for federal income tax purposes. The appeal taken in the Stanback case is now pending before the United States Court of Appeals for the Fourth Circuit.

In Riggs v. Thompson [1] (D.C.E.D.Ark. 1948) a father and son set up six trusts with family members as beneficiaries and themselves and a bank as trustees. Then the father, son and the six trusts entered into a partnership agreement. Earlier the Commissioner of Internal Revenue had attempted to tax the partnership as an association

1. No opinion for publication.

but was unsuccessful. Riggs Tractor Co. v. Commissioner, 1946, 6 T.C. 889. The Tax Court in the Riggs Tractor Company case surveyed the provisions of the partnership agreement as well as the manner in which the business was conducted and concluded that this was an ordinary partnership and therefore not taxable as an association under the federal revenue laws. In Riggs v. Thompson, supra, the District Court instructed the jury that there were two big questions which they must answer: (1) Did the father and the son and the trustees of the six trusts really and truly intend in good faith to join together as partners for the purpose of carrying on business and sharing in the profits and losses? and (2) Did the father retain in his individual capacity such dominion and control over the corpus and income of these trusts or derive such personal economic benefits therefrom as to remain in reality the owner of such corpus and income for tax purposes? The Court went on to instruct the jury in part as follows (p. 12,925):

"In addition to the points I have mentioned, you may consider any other relevant factors as may be disclosed by the evidence in this case which bear on the question of the true intention of the parties with reference to this partnership. You are to determine from all of the evidence whether J. A. Riggs, Sr., John A. Riggs, Jr., and the trustees of the six trusts really and truly intended to join together for the purpose of carrying on business and sharing in the profits and losses, or both. If they really intended in good faith to form a business partnership, and did so, then this was a valid partnership under the tax laws, and the plaintiff is entitled to recover on this issue.

"It is lawful under both Arkansas law and federal taxing statutes to establish trusts. A person may establish valid trusts for the benefit of his wife, his daughter-in-law, his grandchildren, or others. He may name himself, his son, a trust company or others as trustees. He has a legal right to make complete valid and irrevocable gifts to the trustees of the trusts for the benefit of those for whom the trusts were created. The federal taxing statutes require the donor to pay a gift tax on such gifts above a certain amount.

"The trustees of a trust hold the legal title to trust properties. They are authorized and required to manage and control the trust assets and account to the beneficiaries of the trust for the principal and income in accordance with the terms of the trust. The beneficiaries of a trust have only an equitable interest in the trust properties and have no responsibility or authority in the managment or control of the trust assets.

"The trustees of a trust have a legal right to join with others in good faith as partners in a business partnership, contributing trust properties to the partnership and sharing as partners in the profits or losses of the partnership business for the benefit of the trust beneficiaries provided the terms of the trust give the trustees such authority. *In such a case, it is the trustees of the trust, not the beneficiaries of the trust, who are the partners.* The trust income from such a valid business partnership must be reported by the trust and the income tax thereon paid by either the trust or the trust beneficiary.

"There is no Arkansas or federal statute which prohibits members of the same family, or trustees of trusts for the benefit of members of the same family, from forming a partnership which may be perfectly valid and taxable only as a business partnership under the federal revenue laws.

"Members of the same family, or trustees of trusts for the benefit of members of the same family, or both, who want to engage in business are free to do so in any form of business organization they may select, whether it be a corporation, a partnership, or other arrangement.

\* \* \* \* \* \*

"Whether or not it was a valid partnership under the Arkansas law is immaterial in this case. A partnership may be perfectly valid under state laws and yet not be recognized for taxing purposes by federal statutes.

"As already stated, another issue for you to decide in this case is whether J. A. Riggs, Sr., in his capacity as an individual, retained such dominion and control over the

corpus and income of these trusts, or derived such personal economic benefits therefrom as to remain in reality the owner of the income for tax purposes." (Italics supplied)

The jury in Riggs v. Thompson, supra, returned a general verdict in favor of the plaintiff and on appeal the United States Court of Appeals for the Eighth Circuit affirmed. Thompson v. Riggs, 8 Cir., 1949, 175 F.2d 81. The trial judge in his instructions, as above noted, had referred to both the trusts and the trustees as partners but he specifically instructed the jury as a matter of law that the trustees were to be considered the partners. In the affirming opinion the Appellate Court stated in 175 F.2d at page 82 that the issue was whether or not the evidence was sufficient to support the jury verdict below that the *six trusts* were bona fide members of the partnership. The Appellate Court held that there was sufficient evidence to support such jury verdict. That Court did not pass upon or discuss the matter of the legal capacity of the six trusts to be partners. (Italics supplied)

One of the few cases in which there is found any discussion of the legal capacity of trusts or trustees to be members of a partnership for federal tax purposes is that of Isaac W. Frank Trust of 1927 v. Commissioner, 1941, 44 B.T.A. 934. In that case three family trusts with common trustees formed a partnership and the Board of Tax Appeals apparently held this "association of trusts" was a valid partnership under the federal revenue laws. The Board indicated that this might not be an ordinary partnership but it was a partnership within the statutory definition of that term in the Revenue Act of 1936, which is the same definition as that contained in Section 3797 (a) (2) of the Internal Revenue Code, 26 U.S.C.A. § 3797(a) (2). The legislative history of that section, as well as the cases relative thereto, will be discussed later. It might be noted that on page 942 of 44 B.T.A. the Board stated that the Commissioner of Internal Revenue had recognized the estate of a decedent as a partner under the federal revenue laws and cited I.T. 2026, C.B. III-1, p. 213. It appears from a reading of this ruling that it was not the estate of the deceased partner but rather his personal representative that was held to be a partner for federal tax purposes. In Benson v. Commissioner, 1946, 6 T.C. 748, on page 753 the Tax Court stated, "The circumstances of the creation of the trusts with the wife acting as trustee for the daughters does not affect the question of whether there was a partnership which should be recognized for tax purposes. A trustee's participation in a business partnership stands on the same considerations as an individual's." There was no further discussion regarding the matter of the trustee being a partner and since the Tax Court held the family partnership-trust arrangement invalid in the Benson case, the statement of that Court, set out above, would appear to be in the nature of dictum. The Benson case was subsequently affirmed by the Fifth Circuit. Benson v. Commissioner, 5 Cir., 1947, 161 F.2d 821.

In Larsen v. Burnet, 1930, 60 App.D.C. 158, 50 F.2d 308, a contention by a husband that he was holding as trustee for his wife one-half of community property which he had invested in a partnership was rejected. Cf. Rossmoore v. Commissioner, 2 Cir., 1935, 76 F.2d 520; Mitchel v. Bowers, 2 Cir., 1926, 15 F.2d 287, certiorari denied, 1927, 273 U.S. 759, 47 S.Ct. 473, 71 L.Ed. 877.

The confusion in the cases arising under the Internal Revenue Code as to who is the partner in a trust-partnership arrangement is indicative of the difficulty of attempting to fit a trust into the framework of a partnership and could also be considered as supporting the apparent common law view that such a relationship was an incompatible and inconsistent one. This confusion which arises and the apparent difficulty which is encountered when there is an attempt to fit a trust or trust relationship into a partnership arrangement could be due to some of the following: (1) It is an attempt to fit a rem or non-personal element into a personam relationship; (2) It is an attempt to fit a relationship largely cognizable in equity into a relationship at law; (3) It is an attempt to fit property held in representative ownership, i. e., trust property, into property to be held in co-ownership, i. e., part-

nership property; (4) It is an attempt to superimpose one type of fiduciary relationship, i. e., trustee to beneficiary, on top of another type of fiduciary relationship, i. e., partner to partner; (5) It is an attempt to fit a non-agency relationship into a mutual agency relationship. As heretofore noted, a trust is defined as a "fiduciary relationship." In some cases such relationship has apparently been regarded as the partner. That has also made for confusion.

As heretofore noted, if the trustee or beneficiary is a partner, he would be a partner in his individual capacity. Being a partner in his individual capacity, he would individually assume all the duties, obligations and liabilities usually and ordinarily assumed by usual and ordinary partners. If the trustees of trusts are to be regarded as partners in a partnership, some interesting questions could arise. As heretofore noted, two or more trustees constitute one collective trustee. In cases like the present case where there are three trustees, would such trustees constitute one collective partner or three partners? If such trustees were partners, would each of the three have a voice and vote in partnership affairs equal to any of the other partners? If, as is frequently the case, one of the trustees is a bank or trust company, would such company be liable for all the partnership obligations notwithstanding the rule of ultra vires and notwithstanding attempts to limit such liability? If, as in the present case, one of the trustees is already a partner at the time of the forming of the trust relationship, would he by entering the partnership again under a trustee arrangement be one partner or two partners for purposes of control and management of the partnership?

Even though there are some problems relative to a trustee being a member of a partnership, it should ·be noted that a trustee or beneficiary acting as a partner in his individual capacity would not be subject to all of the impediments relative to a trust estate being a member of the partnership. It has often been stated that taxation is an intensely practical matter. Apt v. Birmingham, D.C.N.D.Iowa 1950, 89 F. Supp. 361, cases cited at page 373. The matter of whether a trustee or beneficiary is a partner in his individual capacity or whether the trust estate is the partner is of practical importance under the provisions of the Internal Revenue Code. Section 181 of the Internal Revenue Code, 26 U.S.C.A. § 181, provides that individuals carrying on business in·partnership shall be liable for income tax in their individual capacity. In Morton v. Thomas, 5 Cir., 1946, 158 F.2d 574, 575, certiorari denied, 1947., 330 U.S. 834, 67 S.Ct. 970, 91 L.Ed. 1281, the United States Court of Appeals for the Fifth Circuit stated, "Under the applicable provisions of the Internal Revenue Code, the only persons taxable on income from a partnership are the partners. * * * They, and they alone, must return and pay the tax on income from the partnership." See also, Scherf v. Commissioner, 5 Cir., 1947, 161 F.2d 495, 497. Thus, from a practical standpoint it becomes necessary to determine which of the component parts of the trust relationship—the trust estate, the trustee, or the beneficiary—is actually the partner since each partner and he alone is taxable on his share of partnership income.

It is apparent in a good many cases, including the present one, that because of the matter of personal liability assumed by each partner the settlor did not desire or intend that either the trustees or the beneficiaries were to be considered as partners. In the present case the plaintiff in his brief states that it was the desire of the settlor to have, "the Trust as a separate entity, as a member of the partnership" because he did not desire the trustees or beneficiaries, as individuals, to be under any personal liability for partnership obligations. The plaintiff in his brief further states, "A trust is of great practical significance because of its availability and means of divorcing benefits from the burdens of ownership, and the settlor in the instant case was merely attempting to emphasize such separation."

Since the present case arises under the provisions of the Internal Revenue Code, it is necessary to consider the pertinent provisions of that Code, including their legislative history and the cases related thereto. Nearly all of such cases have to do with the matter of family partnerships.

However, so far as the present legal questions now under consideration are concerned, the situation would be no different if the parties involved were not related.

Section II, D, of the first federal Revenue Act in 1913, 38 Stat. 168, provided that a partnership as such was not taxable but the individuals carrying on business in partnership should be liable in their individual capacity for income tax on the profits derived from the partnership operations. Similar provisions have been included in every Revenue Act since that time. Section 181 of the present Internal Revenue Code, 26 U.S.C.A. § 181, provides:

"§ 181. Partnership not taxable

"Individuals carrying on business in partnership shall be liable for income tax only in their individual capacity."

Section 182 of the Internal Revenue Code, 26 U.S.C.A. § 182, provides for the inclusion by each partner in his tax return of his share of partnership income, whether or not distribution is made to him, and Section 183 of the Internal Revenue Code, 26 U.S.C.A. § 183, establishes a formula for the computation of partnership income.

Section 8 of the Revenue Act of 1916, 39 Stat. 761, required every partnership to make an informational tax return. Every Revenue Act since that date has contained a similar provision.

Section 187 of the present Internal Revenue Code, 26 U.S.C.A. § 187, provides:

"Sec. 187. Partnership returns

"Every partnership shall make a return for each taxable year, stating specifically the items of its gross income and the deductions allowed by this chapter and such other information for the purpose of carrying out the provisions of this chapter as the Commissioner with the approval of the Secretary may by regulations prescribe, and shall include in the return the names and addresses of the individuals who would be entitled to share in the net income if distributed and the amount of the distributive share of each individual. The return shall be sworn to by any one of the partners."

Thus it is apparent that since 1916 at least, with the exception of a brief period hereafter noted, the partnership has been recognized as a tax accounting rather than a taxable entity for federal income tax purposes, with the individual partners being taxable on their respective shares of partnership income. This concept of a partnership as a computing unit for federal income tax purposes has been generally recognized but one writer has pointed out that for some purposes partnerships have been treated as though they were legal entities. Note, The Operation of the Entity Concept of Partnership in Federal Income Taxation, 97 University of Pennsylvania Law Review (1948) 52.

It was not until the enactment of the Revenue Act of 1932, 47 Stat. 169, that a definition of "partnership" appeared in the Internal Revenue Code. Prior thereto the courts on several occasions found it necessary to determine the meaning of the term partnership as used in the earlier Revenue Acts. In Burk-Waggoner Oil Ass'n v. Hopkins, 1925, 269 U.S. 110, 46 S.Ct. 48, 70 L.Ed. 183, the United States Supreme Court had before it the question of the taxability of an unincorporated joint stock association under the Revenue Act of 1918, 40 Stat. 1057. The Court stated that while such an association might technically be a partnership under the laws of a particular state it was not commonly thought of as such and the inclusion of such an association in the definition of a corporation in the Revenue Act of 1918 was held controlling for federal income tax purposes. The Court went on to state on page 113 of 269 U.S. on page 49 of 46 S.Ct., "The definition given to the term 'corporation' in section 1 applies to the entire act. The language of the section presents no ambiguity. Nor is there any inconsistency between that section and sections 218(a) and 335(c), which refer specifically to the taxation of partnerships. The term partnership as used in these sections obviously refers only to ordinary partnerships." The provisions of Section 218(a) of the Revenue Act of 1918, 40 Stat. 1070, relating to partnerships were substantially similar to those now appearing as Sections 181 and 182 of the Internal Revenue Code, supra. Thus, in 1925, the United States Supreme Court authoritatively stated that the partnerships re-

ferred to in what are now Sections 181 and 182 were ordinary partnerships. It is of interest to note that in 1945 the United States Court of Appeals for the Eighth Circuit in the case of Poplar Bluff Printing Co. v. Commissioner, 8 Cir., 1945, 149 F. 2d 1016, at page 1018, in considering the partnership provisions in the Internal Revenue Code, including the definition of partnership contained therein, stated as follows: "In Burk-Waggoner Ass'n v. Hopkins, * * * it is said: 'The term partnership as used in these sections obviously refers only to ordinary partnerships.'"

A partnership was first defined for federal tax purposes in 1932 by Section 1111 (a) (3) of the Revenue Act of 1932, 47 Stat. 289, which provided:

"(a) When used in this Act * * *

"(3) The term 'partnership' includes a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this Act, a trust or estate or a corporation; and the term 'partner' includes a member in such a syndicate, group, pool, joint venture, on organization."

 Subsequent Revenue Acts contained similar provisions and Section 3797 (a) (2) of the Internal Revenue Code, 26 U.S.C.A. § 3797(a) (2), is in all respects similar to Section 1111(a) (3) of the Revenue Act of 1932, set out above, with the exception of the word "title" which appears in Section 3797(a) (2) in place of the word "Act" as used in Section 1111(a) (3) of the 1932 Revenue Act. In considering the effect of changes Congress makes in the federal revenue laws courts attach great importance to Congressional Committee Reports which usually accompany such changes and contain statements of the particular problem or problems that gave rise to the need for such changes. See Commissioner v. Korell, 2 Cir., 1949, 176 F.2d 152, 154, affirmed, 1950, 70 S.Ct. 905. The reports of the House and Senate Committees explain the reason for the inclusion of a definition of partnership in the 1932 Revenue Act. H.R.Report No. 708, 72d Cong., 1st Sess. (March 8th, 1932) 52, 53, states:

"Title VIII Administrative & General Provisions

"Section 1004. Joint Ventures, Syndicates, Pools and Other Similar Organizations

"Some confusion has existed over the requirements of the prior acts as to the time and manner of returning income from the operations of joint ventures, syndicates, pools, and similar organizations. If the syndicate was not an association, partnership, or trust within the meaning of the act, there was no express requirement in the act or regulations for the filing of a syndicate return, and the sole responsibility of making returns of the annual gains and losses of the syndicate was placed upon the several members. Quite frequently, however, the members of such a syndicate overlooked the necessity of their making returns each year of their shares in the annual gains and losses from syndicate operations and assumed that they were required only to make returns of their shares in the ultimate gain or loss from the entire syndicate operations in the year when the syndicate was wound up or liquidated. Moreover, a strict observance of the letter of the prior acts would have required each member to determine his annual share in the syndicate gains or losses upon the basis of his own accounting period and according to his own method of accounting, irrespective of the accounting period or method of accounting upon which the books or records of the syndicate were kept.

"The bill does away with this uncertainty by placing all joint ventures, syndicates, pools, and similar organizations, which do not constitute associations or trusts, in the category of partnerships, and the members of such syndicates, pools, etc., in the category of partners. This provision will have the effect of requiring the syndicate to file an information return similar to the return of a partnership and will thus make it easier for the members to determine the distributive shares in the syndicate gains and losses which are to be included in their own returns."

▮▮▮▮ The report of the Senate Finance Committee contained substantially the same provisions as that portion of the House Report set out above. Sen.Report No. 665, 72d Cong., 1st Sess. (May 9th, 1932) 56. In the Conference Report of the two Committees the number of this Section was changed to Section 1111. H.R.Report No. 1492, 72d Cong., 1st Sess. (June 3d, 1932) 2, 30. For purposes of convenience the definition of partnership contained in Section 1111(a) (3) of the Revenue Act of 1932 will be hereinafter referred to as the "1932 provision." It would seem from the reports of the Senate and House Committees that the particular problems that give rise to the need for the 1932 provision were in connection with the matter of the making of informational returns by joint ventures, syndicates, pools and similar organizations and the filing of tax returns by their members. There is nothing in those reports to indicate that the members of the Committees in recommending the adoption of the 1932 provision intended or even considered accomplishing anything other than to provide for the making of informational returns by the organizations referred to and the filing of tax returns by their members. The question then is whether, nevertheless, the 1932 provision did work a change in the concepts of partnership for federal income tax purposes under the provisions of Sections 181 and 182 of the Internal Revenue Code and the corresponding provisions of prior Revenue Acts. The provisions of the Internal Revenue Code are not regarded as creating interests or rights; they designate what existing interests or rights shall be taxed and provide for the classification of such interests or rights for federal income tax purposes. Morgan v. Commissioner, 1940, 309 U.S. 78, 80, 60 S.Ct. 426, 84 L.Ed. 585. As noted in the family partnership cases and in other cases arising under the Internal Revenue Code, the federal courts reserve the right to make their own determination as to the nature and reality of a claimed existing relationship and as to its classification for federal income tax purposes. The plaintiff in the present case in his complaint and in the stipulation of facts contends that the S. Hanson Lumber Company is a partnership and not one of the other types of organizations such as joint ventures, pools, groups or syndicates which are classified as partnerships by the partnership definition in Section 3797(a) (2) of the Internal Revenue Code, supra.

▮▮▮▮ Congress in the different Revenue Acts has classified certain business units as tax informational units and others as tax-paying units. The classification of a business unit as a tax-paying unit by a particular federal Revenue provision has been said to give such unit the status of a separate entity for federal tax purposes. Prior to the War Revenue Act of 1917, 40 Stat. 300, partnerships were classified for federal income tax purposes as tax informational units only. By section 201 of the War Revenue Act of 1917, 40 Stat. 303, an excess profits tax was levied directly upon the income of partnerships and thus under the provisions of that Act they were given the status of a tax-paying unit or separate entity for federal tax purposes. Subsequently that provision of the War Revenue Act of 1917 was repealed and partnerships reverted to the status of tax informational units. It is not believed that by giving partnerships the status of a tax-paying unit or separate entity for federal tax purposes in the Revenue Act of 1917 partnerships were thereby endowed with new general capacities and powers other than they had theretofore possessed or that they lost any of such powers or capacities when the pertinent provision of that Revenue Act was repealed. Section 161 of the Internal Revenue Code, 26 U.S.C.A., § 161, imposes a tax upon the income of property held in trust and upon the income of estates. Thus estates and trust relationships are classified as tax-paying units under the provisions of that Code. Congress might have given them the status of tax informational units. As in the case of partnerships, it would seem that whether trust relationships and estates are classified as tax informational units or tax-paying units for federal income tax purposes would not add to or subtract from their general capacities and powers. Accordingly, the fact that a trust relationship is an entity for federal income tax purposes would not add to the capacity of

such a relationship or of a trust estate to be a partner for federal income tax purposes. It is believed that the 1932 provision relating to the definition of a partnership did not endow partnerships with any new general powers or make any change in their general capacity. It might be noted that in Iowa under the local common law partnerships are regarded as having an entity separate from their members. Rubio Sav. Bank of Brighton v. Acme Farm Products Co., Iowa 1949, 37 N.W.2d 16, 21, 9 A.L.R.2d 459; Thompson v. Brownlee, 1941, 231 Iowa 406, 1 N.W.2d 239, 241; Soursos v. Mason City, 1941, 230 Iowa 157, 296 N.W. 807, 808; Bankers Trust Co. v. Knee (1936) 222 Iowa 988, 993, 270 N.W. 438; National Sewer Pipe Co. v. Smith-Jaycox Lumber Co., 1918, 183 Iowa 17, 166 N.W. 708, 709; Lansing v. Bever Land Co., 1912, 158 Iowa 693, 698, 138 N.W. 833; Brumwell v. Stebbins, 1891, 83 Iowa 425, 428, 49 N.W. 1020; Ruthven v. Beckwith, 1890, 84 Iowa 715, 717, 45 N.W. 1073, 51 N.W. 153; Fitzgerald v. Grimmell, 1884, 64 Iowa 261, 264, 20 N.W. 179. However, under the provisions of the Iowa State Income Tax Act, Sections 422.15 and 422.20, Code of Iowa, 1950, I.C.A., partnerships are classified as tax informational units only. It could not very well be claimed that such classification changed the status of Iowa partnerships under the local common law.

The United States Supreme Court in the so-called family partnership cases gave consideration to the tests and concepts of a partnership for federal income tax purposes. In the case of Commissioner v. Tower, supra, at page 286 of 327 U.S. at page 535, of 66 S.Ct., the Court defined a partnership as follows:

"A partnership is generally said to be created when persons join together their money, goods, labor, or skill for the purpose of carrying on a trade, profession, or business and when there is community of interest in the profits and losses."

The above definition was subsequently cited with approval in the majority opinion in Commissioner of Int. Rev. v. Culbertson, 1949, 337 U.S. 733, 740, 69 S.Ct. 1210, 1213, 93 L.Ed. 1659. In a concurring opinion which was in the nature of an explanation of the majority opinion, Justice Frankfurter emphasized that the majority did not attempt to establish a special concept of partnership for tax purposes differing from the usual common law concepts of partnership at pages 749, 750 et seq. of 337 U.S., at page 1218 of 69 S.Ct.

"* * * in defining the relevant considerations for determining the existence of a partnership, the Court in the Tower case relied on familiar decisions formulating the concept of partnership for purposes of various commercial situations in which the nature of that concept was decisive. * * *

"The taxability of income under §§ 181 and 182 is not a purely economic problem like the determination under §.22(a) [26 U.S.C.A. § 22(a)] of what is income and to whom it is attributable. The word 'income' has none but an economic significance, and so the application of § 22(a) is properly a matter of economic analysis. Cf. Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731. But §§ 181 and 182 import a concept of a different sort. These sections make taxability turn on the existence of the relation of 'partnership.' The term carries its own meaning, just as does 'negligence' in the Federal Employers' Liability Act [45 U.S.C.A. § 151 et seq.] because such a common-law concept has a content familiar throughout the country to those to whom the law speaks. The basic criteria which determine its applicability have been so well and so long established that they were implicitly incorporated by the Internal Revenue Code's definition of 'partnership.'" (There follows here a footnote citation in which the definition of partnership in Section 3797(a) (2) of the Internal Revenue Code is set out followed by the comment), "This definition carries two necessary implications: (1) recourse to the law of a particular State is precluded, see Treas.Reg. 111, §§ 29.3797(1), 29.3797(4); see also Lyeth v. Hoey, 305 U.S. 188, 193–194, 59 S.Ct. 155, 158, 83 L.Ed. 119, 119 A.L.R. 410; (2) use of the words 'The term 'partnership' 'includes' presupposes that the term has a recognized content. If this is not to be found in the law of a parti-

cular State, it can only be found in the general law of partnership."

Frankfurter's concurring opinion goes on page 751 of 337 U.S., on page 1219 of 69 S.Ct.

"Congress has thereby stamped a nation-wide meaning upon the term which disregards minor local variants or an occasional legal sport. * * *

"It seems to me important, therefore, to make crystal clear that there is no special concept of 'partnership' for tax purposes, while at the same time recognizing that in view of the temptations to assume a virtue that they have not for the sake of tax savings, men and women may appear in a guise which the gimlet eye of the Tax Court is entitled to pierce. We should leave no doubt in the minds of the Tax Court, of the Courts of Appeals, of the Treasury and of the bar that there is 'no reason' why the 'general rule' by which the existence of a partnership is determined 'should not apply in tax cases where the Government challenges the existence of a partnership for tax purposes.'"

In the majority opinions in the Tower, Lusthaus and Culbertson cases no reference is made to the 1932 provision, Section 3797 (a) (2) of the Internal Revenue Code, defining partnerships. So that it would seem the United States Supreme Court did not regard the inclusion of a definition of partnership in the federal revenue laws as having introduced any new tests for or concepts of partnership. That view finds support in the concurring opinion of Justice Frankfurter in the Culbertson case, referred to, where in referring to the partnership definition he states that the term "partnership" used in that definition "presupposes" that the term has a recognized content and "if this is not to be found in the law of a particular State, it can only be found in the general law of partnership." As Justice Frankfurter indicates in his concurring opinion, making use of the generally recognized principles of law in determining the validity of a partnership for federal income tax purposes is not the same as allowing such validity to depend upon "local variants" or "an occasional

legal sport" found in the law of a particular state. Judson A. Crane, Dean Emeritus of the University of Pittsburgh Law School and a well known writer in the field of partnership law, in 35 Iowa Law Review (1950) 532, 533, refers to the decision in the Culbertson case and then states, "* * * the effect of which appears to be that a partnership at common law should be regarded as a partnership under the Internal Revenue Act."

■ It seems apparent from the above United States Supreme Court decisions that a partnership must meet the factual tests of a common law partnership in order to be considered valid for federal income tax purposes. It also seems apparent that the Supreme Court did not confine the applicability of the common law concepts of partnership merely to the factual elements or factual criteria of such a partnership, but that a partnership must also comply with or be compatible with the legal concepts of a common law partnership in order that it be considered valid for federal income tax purposes.

The plaintiff cites the following Treasury Regulations: Section 29.3797-1 of Regulations 111 provides in part,

"For the purpose of taxation the Internal Revenue Code makes its own classification and prescribes its own standards of classification. Local law is of no importance in this connection. * * * The term 'partnership' is not limited to the common law meaning of partnership but it is broader in its scope and includes groups not commonly called partnerships. (See section 29.3797-4.)"

Section 29.3797-4 of Regulations 111 provides in part,

"The Internal Revenue Code provides its own concept of a partnership. Under the term 'partnership' it includes not only a partnership as known at common law, but, as well, a syndicate, group, pool, joint venture, or other unincorporated organization which carries on any business, financial operation, or venture, and which is not, within the meaning of the Code, a trust, estate, or a corporation."

If these Regulations are to be construed as doing more than classifying existing relationships for federal income tax purposes, or if they are to be construed as establishing concepts of partnership for federal income tax purposes which are different from the concepts of ordinary partnerships, then it would seem that they are not in accord with the decisions of the United States Supreme Court in the Morgan, Tower and Culbertson cases cited and discussed above and that they are not in accord with the scope and intent of the 1932 provision defining partnerships, as shown by the legislative history of that provision. The Committee Reports accompanying the 1932 provision show that it was the intent of Congress by such provision to tighten up the pertinent provisions of the Internal Revenue Code so that more income taxes might be collected. There is nothing in those Committee Reports to support the view that Congress intended by the enactment of the 1932 provision to accomplish a minimizing of federal income taxes by providing a means for the splitting of income not theretofore afforded. The case of Isaac W. Frank Trust of 1927 v. Commissioner, 1941, 44 B.T.A. 934, has been heretofore referred to. In that case the Board of Tax Appeals discussed the matter of "trusts as partners" and apparently held that a "trust" had the capacity to become a valid member of a partnership for federal income tax purposes. The Board cited a number of authorities, on page 942, in support of the statement that the Commissioner could not attack the validity of a claimed partnership arrangement because he was not a party in interest. If the Board was following that rule, then all the discussion as to the capacity of "trust" to be a partner was non sequitur. However, it is possible that the Board did not intend to follow the rule referred to by it. Such being the case, then the decision of the Board is largely based upon the theory that the 1932 provision effected a basic change in the concepts of a partnership for federal income tax purposes. As heretofore noted, such a view is not in accord with the legislative history of the 1932 provision and is not in accord with the decisions of the United States Supreme Court in the Tower, Lusthaus and Culbertson cases, all of which were decided subsequent to the enactment of the 1932 provision.

It appears that the claim of a partnership relation for a trust is peculiar to and indigenous to cases arising under the Internal Revenue Code and to situations where federal income taxes are involved. There is no indication in the decisions of the United States Supreme Court that it intended that a type of partnership relation unknown to any field of the common law should be given recognition for federal income tax purposes.

It is the view of the Court that a trust cannot be a valid member of a partnership for federal income tax purposes.

It is the holding of the Court that the R. M. Hanson Trust during the years in question was not a valid member of the partnership known as the S. Hanson Lumber Company for federal income tax purposes. In view of that holding, it is unnecessary to make a determination on the issue as to consent. The holding that the R. M. Hanson Trust was not a valid member of the partnership known as the S. Hanson Lumber Company during the years in question is determinative of the entire case. Judgment, therefore, will be entered in favor of the defendant Collector.